889 P.2d 4

**STATE of Arizona, Appellee,**

v.

**John Preston LUPE, Appellant.**

No. 1 CA–CR 93–0176.

Court of Appeals of Arizona,
Division 1, Department D.

March 15, 1994.

Review Denied Feb. 22, 1995.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div. and Rory L. Whipple, Asst. Atty. Gen., Phoenix, for appellee.

A. Michael Espino, Navajo County Public Defender by Terry Kent Brewer, Deputy Public Defender, Holbrook, for appellant.

## OPINION

CLABORNE, Presiding Judge.

John Preston Lupe ("Appellant") appeals from a conviction of aggravated driving while under the influence of intoxicating liquor when his driver's license was suspended, canceled, revoked, or refused, a class 5 felony, and a mitigated term of one-year imprisonment. The sole issue is whether the trial court properly exercised jurisdiction over Appellant for an offense committed outside the White Mountain Apache Reservation ("the Reservation") by an Apache tribal member who was pursued into, and arrested within, the Reservation. We find that it did and affirm.

## FACTS AND PROCEDURE BELOW

A Pinetop–Lakeside police officer ("the officer"), travelling westbound on State Route 260, observed a vehicle carrying three occupants exit a parking lot at a high rate of speed and proceed eastbound towards Whiteriver near Pinetop, Arizona. The officer changed directions and pursued the vehicle, noticing that the driver was speeding and driving recklessly. The officer turned on his overhead emergency lights before entering the Reservation and stopped the vehicle on

the Reservation. The officer arrested Appellant, the driver of the vehicle, after observing his intoxicated state. After learning that the State had suspended and revoked Appellant's license, the officer informed Appellant that he was being arrested for aggravated driving under the influence.

The State charged Appellant with aggravated driving while under the influence of intoxicating liquor when his driver's license was suspended, revoked, or refused, a class 5 felony. Appellant filed a motion to suppress and a motion to dismiss. The trial court denied the motions finding that the officer activated his overhead emergency lights before entering the Reservation and that Appellant therefore tried to elude the officer. Appellant waived his right to trial by jury and stipulated to the record. The trial court found Appellant guilty of the charged offense and sentenced him to the mitigated term of one year.

## DISCUSSION

As a preliminary matter, Appellant states that a factual dispute exists. Appellant argues that the officer closely pursued him only after entering the Reservation. Appellant also argues that the officer was not in pursuit of Appellant because the officer did not activate his siren. The trial court found, however, that the officer activated his overhead emergency lights, and was therefore in pursuit of Appellant, before entering the Reservation.

■ This Court will not disturb a trial court's finding of fact unless it is clearly erroneous. *State v. Burr*, 126 Ariz. 338, 339, 615 P.2d 635, 636 (1980). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (citation omitted). We have reviewed the entire record and find that the trial court was not clearly erroneous.

■ The sole issue, then, is whether the trial court properly exercised jurisdiction over Appellant for an offense committed outside the Reservation by an Apache tribal member who was pursued into, and arrested within, the Reservation. Appellant contends that the trial court erred by denying his motion to suppress and motion to dismiss because the trial court lacked jurisdiction over him. We disagree and affirm.

Both parties cite *State v. Spotted Horse*, 462 N.W.2d 463 (S.D.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). In that case, a state police officer pursued a Native American onto a reservation for an off-reservation offense. The South Dakota Supreme Court said that since South Dakota did not assume jurisdiction over Indian country pursuant to Public Law 280 [1], its fresh pursuit statute could not reach onto the reservation, and the arrest was therefore illegal.

The court went on to say that the trial court nonetheless properly exercised jurisdiction over the defendant pursuant to the *Ker–Frisbie* rule:

> When a person accused of a crime is found within the territorial jurisdiction wherein he is so charged and is held under process legally issued from a court of that jurisdiction, neither the jurisdiction of the court nor the right to put him on trial for the offense charged is impaired by the manner in which he was brought from another jurisdiction, whether by kidnapping, illegal arrest, abduction, or irregular extradition proceedings.

*Spotted Horse*, 462 N.W.2d at 467 (citation omitted). The court said that the illegal arrest only precluded use of evidence obtained from that arrest. It would neither prevent the trial court from exercising jurisdiction over the defendant, nor would it preclude the use of independent evidence obtained through the officer's observations before the illegal arrest.

We do not find the court's reasoning in *Spotted Horse* persuasive. Public Law 280 and its subsequent amendments [2] only apply

---

1. Act of August 15, 1953, ch. 505, 67 Stat. 588 (codified as amended at 18 U.S.C. § 1162, 28 U.S.C. § 1360 (1976).

2. 18 U.S.C. §§ 1151–62, 28 U.S.C. § 1360, and 25 U.S.C. §§ 1321–26.

to situations in which the defendant committed the offense *within* Indian country. In *Spotted Horse* and in our case, the offense was committed *outside* Indian country. We therefore fail to see how Public Law 280 and its progeny apply. *Cf. State ex rel. Old Elk v. District Court,* 170 Mont. 208, 552 P.2d 1394, 1398 (1976), *appeal dismissed,* 429 U.S. 1030, 97 S.Ct. 655, 50 L.Ed.2d 637 (1976) (18 U.S.C. sections 1151–65 do not apply to give the federal authorities jurisdiction because the crime was not committed within Indian country).

 Most matters dealing with Native American reservations are within the exclusive jurisdiction of the tribal or federal courts unless falling specifically within the state's jurisdiction as directed or allowed by an act of Congress. *Old Elk,* 552 P.2d at 1396. In the absence of governing acts of Congress, the question becomes whether the state action infringed on the right of tribes to make their own laws and to be ruled by them. *See Old Elk,* 552 P.2d at 1398. Because there are no governing acts of Congress here, we must determine whether the state action "interferes with reservation self-government." *Kake, Organized Village of v. Egan,* 369 U.S. 60, 67, 82 S.Ct. 562, 567, 7 L.Ed.2d 573 (1961).

Courts faced with this question seem to place great weight on whether any provision for extradition exists. *See Benally v. Marcum,* 89 N.M. 463, 553 P.2d 1270 (1976); *Old Elk* at 1396. In *Benally,* the New Mexico Supreme Court held that if any such provision does exist, state peace officers may not by-pass it and make an on-reservation arrest of a Native American who commits an off-reservation offense. *Benally,* 553 P.2d at 1274–75. On the other hand, in *Old Elk,* the Montana Supreme Court held that in the absence of any provision for extradition, a county sheriff had authority to arrest a Native American on the Crow Reservation for a homicide committed off-reservation. *Old Elk,* 552 P.2d at 1398.

 We need not consider whether, in the absence of a tribal extradition procedure, a state peace officer can arrest *any* Native American on tribal lands for an offense committed off the reservation. The facts in this case do not require such a broad ruling. Appellant committed the offense on State land, and the officer began his close pursuit of Appellant on State land. Appellant entered reservation land before stopping in response to the officer's flashing lights. The State has a particularly strong policy interest in not allowing suspects to narrowly escape arrest and avoid this State's jurisdiction over offenses committed within this State by fleeing across the border to another jurisdiction. We therefore consider only whether the State, in arresting Appellant after following him in close pursuit from State lands onto the reservation, interfered with tribal self-government.

 The White Mountain Apache Tribe ("the Tribe") and the State have not entered an extradition agreement requiring the State to follow extradition procedures in a close pursuit situation. The Tribe also has not enacted laws regarding the State's authority to arrest a tribal member in such a situation. The arrest therefore does not interfere with the Tribe's "right ... to make [its] own laws and be ruled by them." Furthermore, an arrest after a close pursuit from State lands onto the reservation does not interfere with the tribal government's power to regulate its "internal and social relations." *Cf. New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 332, 103 S.Ct. 2378, 2385, 76 L.Ed.2d 611 (1983). Such an arrest does not interfere with the tribal government's ability to protect the political integrity of the tribe or the welfare of tribal members as they conduct their business on the reservation. *Cf. Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), *reh'g denied,* 452 U.S. 911, 101 S.Ct. 3042, 69 L.Ed.2d 414 (1981) (tribal sovereignty may include power to prevent conduct that affects the political integrity, economic security, or health and welfare of the tribe).

We therefore hold that an arrest of a tribal member made on the reservation after a close pursuit that began on State land does not interfere with tribal sovereignty where no extradition agreement exists. The trial

court properly exercised jurisdiction over Appellant.

Affirmed.

GERBER and McGREGOR, JJ., concur.