68 P.3d 428

**SANDERSON LINCOLN MERCURY, INC., an Arizona corporation, Plaintiff–Appellant,**

v.

**FORD MOTOR COMPANY, a foreign corporation; the State of Arizona; the Arizona Department of Transportation and its Director, Victor Mendez, in his capacity as Director of the Arizona Department of Transportation, Defendants–Appellees.**

No. 1 CA–CV 02–0588.

Court of Appeals of Arizona, Division 1, Department D.

April 29, 2003.

Sacks Tierney P.A. By Marvin S. Cohen and Stephen P. Linzer, Scottsdale, Attorneys for Plaintiff–Appellant.

Berkowitz Stanton Brandt Williams & Shaw LLP By Kurt D. Williams, Kansas City, MO, and Snell & Wilmer, L.L.P. By Martha E. Gibbs, Phoenix, Attorneys for Defendant–Appellee Ford Motor Company.

Janet Napolitano, Former Attorney General, Terry Goddard, Attorney General By John C. Dutton, Assistant Attorney General, Phoenix, Attorneys for Defendants–Appellees State of Arizona, Arizona Department of Transportation and its Director.

## OPINION

EHRLICH, Judge.

¶ 1 Sanderson Lincoln Mercury, Inc. ("Sanderson") appeals a judgment affirming the decision of the Arizona Department of Transportation and its director (together "ADOT") that Sanderson lacked standing to object to the plans of Ford Motor Company ("Ford") to establish an additional Lincoln Mercury dealership on a county island within the exterior boundaries of the incorporated City of Phoenix ("City"). For reasons that follow, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶ 2 Arizona Revised Statutes section ("A.R.S. §") 28–4453(A) (Supp.2002) provides that an entity such as Ford that intends to establish a new motor-vehicle franchise must notify ADOT of its intent.[1] ADOT then must notify existing franchisees of the same line-make in the community or within ten miles of the proposed dealership. A.R.S. § 28–

---

1. Section 28–4453(A), A.R.S., states:
   If a franchisor seeks to enter into a franchise establishing an additional new motor vehicle dealership of the same line-make, the franchisor shall, and the franchisee may at any time, file with the director [of ADOT] a notice of intention to enter into a franchise for additional representation of the same line-make.

4453(B).[2] "Community" is defined as the "relevant market area," which in turn is defined as "the incorporated city or town in which the franchise is located." A.R.S. § 28-4301(5)(Supp.2002). A dealership meeting the statutory criteria may file a written objection with ADOT. A.R.S. § 28-4454 (Supp. 2002).[3] If ADOT agrees that the objecting party has met the elements of being a franchisee of the same line-make in the relevant area, evidence is submitted, and a hearing and determination of standing ensue. A.R.S. § 28-4455(A)(1998), § 28-4456 (Supp.2002).

¶ 3 In accordance with the statutory scheme, Ford notified ADOT of its intention to establish a new Lincoln Mercury dealership in the Phoenix metropolitan area. The dealership would be located within the external boundaries of the City but on a county island in an area called Chauncey Ranch, which is the subject of a development and pre-annexation agreement with the City. In its letter to ADOT, Ford identified five Lincoln Mercury dealerships in the area, one of which was Sanderson. Ford also asked to be advised when ADOT had sent the statutory notices.

¶ 4 Sanderson filed an objection, claiming that it was within the same community as the proposed dealership. On the same date, Ford wrote ADOT, asserting that, because the new dealership would be located on a

county island, no existing dealership was entitled to notice or had a right to object. Ford then moved to dismiss Sanderson's objection on the basis that Sanderson is neither in the same community nor within ten miles of the proposed dealership. It maintained that, because Sanderson is within the City, Sanderson did not have standing to object and, likewise, that ADOT did not have jurisdiction to consider the objection.

¶ 5 Sanderson conceded that it is not within ten miles of the location of the new dealership and that the new location is not within the City in any but an intuited geographic sense because the new location is on a county island within the exterior boundaries of the City.[4] It argued, however, that the administrative hearing on the matter should be focused on the definition of "relevant market area" and apply a geographic perspective, recognizing that the site is within the Phoenix metropolitan area, although not within the City, and that a new dealership in the Chauncey Ranch development would have an adverse impact on Sanderson's business. Sanderson contended also that the location of the new dealership should be considered part of the City as a practical matter because the Chauncey Ranch development is the subject of a pre-annexation agreement and expected to be joined to the City in the future.

¶ 6 Sanderson's arguments were rejected, and Ford's motion to dismiss was granted.

2. Section 28-4453(B), A.R.S., states:

If the franchisor intends to establish an additional new motor vehicle dealership, the director [of ADOT] shall send notice within five days of receipt to all franchisees of the same line-make in the community and to all other franchises located within ten miles of the proposed dealership by the shortest street route, if located outside the community, who are then engaged in the business of offering to sell or selling the same line-make. In counties with a population of less than two hundred thousand persons, the notice additionally shall be sent to all dealers located within twenty miles of the proposed new franchise as determined by the shortest street route. The director shall address copies of notices to the principal place of business of the franchisees.

3. The pertinent portions of A.R.S. § 28-4454 provide:

A. A person who receives or is entitled to receive a copy of a notice provided for in § 28-

4453 may object to the approval of a notice by filing a written objection with [ADOT] within fifteen days from the date the notice was received by the person.

B. If there is an objection to the establishment of a new motor vehicle dealership, the objecting new motor vehicle dealer shall submit evidence to the director [of ADOT] to establish that:

1. The objector is a new motor vehicle dealer located in the same community as the proposed new motor vehicle dealership, or within ten miles by the shortest street route of the proposed dealership, if located outside the community....

2. The objector is providing facilities, equipment, parts, capital and personnel in substantial compliance with its contractual obligation to the franchisor.

4. For this reason, there is no need for a further discussion of the statutory ten-mile radius. Further references to the City remain as references to the City of Phoenix as incorporated.

The ADOT administrative law judge found that Sanderson did not have standing to object because it is not within the same community as the proposed new dealership as "community" is defined by the applicable statutes.

¶ 7 Sanderson appealed the administrative decision to the superior court. A.R.S. § 28–4456(G)(Supp.2002), § 12–904 (Supp.2002), § 12–905 (1992). The court affirmed the decision based on the administrative record and briefing by the parties. It found, as had ADOT, that the legislature had unambiguously defined "community" and that the location of the new dealership is not within the City. Sanderson then appealed to this court. A.R.S. § 12–2101(B) (1994).

## DISCUSSION

¶ 8 In reviewing an administrative decision, we determine whether the order "is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12–910(E); *see also Romo v. Kirschner,* 181 Ariz. 239, 240, 889 P.2d 32, 33 (App.1995). There is no question of the evidence in this case, and, while we give great weight to an agency's interpretation of the statutes applicable to it, *Capitol Castings, Inc. v. Ariz. Dep't of Econ. Sec.,* 171 Ariz. 57, 60, 828 P.2d 781, 784 (App.1992), when the agency's interpretation is inconsistent with the legislature's intent, we do not defer to the agency. *Foster v. Anable,* 199 Ariz. 489, 491 ¶ 5, 19 P.3d 630, 632 (App.2001). We review the application of the law *de novo. Lake Havasu City v. Ariz. Dep't of Health Serv.,* 202 Ariz. 549, 551 ¶ 4, 48 P.3d 499, 501 (App.2002).

¶ 9 To reiterate, to have a standing to object to the establishment of a new dealership in the context of Ford's proposal, Sanderson must be located within the same "community" as the new dealership. "Community" is "the relevant market area," defined as "the incorporated city or town in which the franchise is located." A.R.S. § 28–4301(5).

¶ 10 Sanderson insists, though, that the statutory definition of "community" is ambiguous. It contends that the statutory reference to "city" can mean either a political

entity or a geographic entity and that the use of the phrase "relevant market area" indicates a legislative intent to apply the broader geographic interpretation. Sanderson further maintains that, with such an interpretation, the exterior boundaries of the City would define the geographic location and, therefore, the Chauncey Ranch development, although a county island, would be part of the "relevant market area."

¶ 11 A disagreement with a law is not appropriately argued to a judicial tribunal if the words of the law are plain and express; such arguments must be reserved for legislative consideration. *See United States v. Fisher,* 6 U.S. (2 Cranch) 358, 389, 2 L.Ed. 304 (1805). "The primary rule of statutory construction is to find and give effect to legislative intent." *Mail Boxes, Etc., U.S.A. v. Indus. Comm'n of Ariz.,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). To determine that intent, we look first to the language of the statute, and we presume that the legislature has said what it means. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co., Inc.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994); *see also Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991)(If the statutory language is unambiguous, we give effect to the language and do not use other rules of statutory construction in interpretation.); A.R.S. § 1–213 (2002)("Words and phrases shall be construed according to the common and approved use of the language."). Only if the legislative intent is not clear from the statute do we consider other factors such as the statute's context, subject matter, historical context, effects and consequences, and spirit and purpose. *Wyatt v. Wehmueller,* 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991).

¶ 12 The statutory scheme at issue is not ambiguous. The legislature defined "community" as "relevant market area," which it further defined as "the incorporated city or town in which the franchise is located." A.R.S. § 28–4301(5). The phrase "incorporated city" necessarily contemplates a locality defined by its metes and bounds.

A.R.S. § 9–101(A) (Supp.2002).[5] It follows that an area excluded from the defined area of incorporation is not part of the "city," as is true of a county island. Accordingly, Sanderson, although located within the incorporated City of Phoenix, is nonetheless not in the same community as the new dealership, the location of which is not part of the incorporated City. Sanderson, therefore, is without standing to object to the new dealership.

¶ 13 Despite the express definition in the statute, Sanderson argues that the use of the phrase "relevant market area" demonstrates a legislative intent to overlay trade regulation concerns on the statute, which in turn requires that we interpret the statute as applying geographic rather than political boundaries. It contends that, by defining "community" as "relevant market area," the legislature indicated that "community" was to be read consistently with relevant market concepts under antitrust principles.

¶ 14 We discern no such demonstrable legislative purpose but, instead, the contrary purpose in the legislature's specific definition of "relevant market area." Indeed, nothing in the statutory language supports Sanderson's position that principles of antitrust law should be superimposed on the statutory scheme to alter the express articulation of the legislature. The legislature defined "community" and "relevant market area" in terms of an incorporated city. Had it intended "community" and "relevant market area" to apply to a geographic area rather than to the legal boundaries of an incorporated entity or had it intended that antitrust principles apply, it could have drafted the statute accordingly.[6]

¶ 15 Sanderson argues that not applying a geographic perspective to the definitions of "community" and "relevant market area"

renders the phrase "relevant market area" meaningless. "Relevant market area" is not, however, a phrase being used to describe or define another term; it is, like "community," what is being defined. Applying the definition expressly provided by the legislature hardly renders a word or phrase meaningless.

¶ 16 Moreover, demonstrating that it would have included more of a geographic perspective had it wished to do so, the legislature included a geographic element in the regulatory scheme. It provided standing to object to existing franchises within ten miles of a proposed dealership or, in counties with a population of fewer than 200,000 persons, existing franchises within twenty miles. A.R.S. § 28–4454(B)(1).

¶ 17 Additionally, because it is the state that has the power to establish cities and towns, such "cities and towns are no more than political entities created as the legislature deems wise." *City of Tucson v. Pima County*, 199 Ariz. 509, 515 ¶ 19, 19 P.3d 650, 656 (App.2001)(citing *Hunter v. City of Pittsburgh*, 207 U.S. 161, 178–79, 28 S.Ct. 40, 52 L.Ed. 151 (1907)).

> Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them. The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state.

*Id.* (quoting *Hunter*, 207 U.S. at 178, 28 S.Ct. 40). *See also* ARIZ. CONST. art. 13 § 1 ("Municipal corporations shall not be created by special laws, but the Legislature, by general

---

5. *Section 9–101(A), A.R.S., provides:*

   When two-thirds of the qualified electors residing in a community containing a population of fifteen hundred or more inhabitants petition the board of supervisors, setting forth the metes and bounds of the community, and the name under which the petitioners desire to be incorporated, and praying for the incorporation of the community into a city or town, ... it shall, by an order entered of record, declare the community incorporated as a city or town.

6. By defining "relevant market area" as it did, the legislature well may have intended to foreclose the litigation that occurs in antitrust cases over the definition of relevant market. *See, e.g., Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 344–45 (8th Cir.1995)(plaintiff's antitrust claim often rises or falls on ability to prove a relevant market); *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1413–14 (9th Cir.)(as initial burden in demonstrating restraint of trade, plaintiff must delineate a relevant market), *cert. denied*, 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991).

laws, shall provide for the incorporation and organization of cities and towns and for the classification of such cities and towns in proportion to population, subject to the provisions of this Article."); *Local 266, Int'l Bhd. of Elec. Workers, A.F. of L. v. Salt River Project Agric. Improvement & Power Dist.,* 78 Ariz. 30, 38, 275 P.2d 393, 400 (1954)("The powers of a municipal corporation are those which are given it by the state."); *Kimble v. City of Page,* 199 Ariz. 562, 565 ¶ 18, 20 P.3d 605, 608 (App.2001)("A municipal corporation exercises law-making authority only to the extent delegated by statute."); *cf. Amish v. City of Phoenix,* 36 Ariz. 21, 27, 282 P. 42, 44 (1929)(City may change its boundaries according to state statutes.).

¶ 18 Sanderson nevertheless insists that another county island within the City, the Phoenix Country Club, would be considered part of the City if it were sold for development of a new automobile dealership because it is located near the geographic center of Phoenix and that Chauncey Ranch should be treated no differently. Sanderson, however, provides no record in support of this claim but seems to merely assume that this would be the case and then attempts to use that assumption to bolster its argument regarding the Chauncey Ranch development. There is no support for Sanderson's argument with respect to Chauncey Ranch in an analogy to a situation that has never occurred and that has no basis in the record.[7]

¶ 19 The definition of "community" is not ambiguous. The legislature clearly defined the word as "the incorporated city or town in which the franchise is located." The parties do not dispute that Sanderson is located in the City and that the new dealership is located on a county island not a part of the City. Consequently Sanderson, for the purpose of applying the statutory scheme, is not located in the same community as the new dealership.

¶ 20 Sanderson continues by arguing that Ford should not even be allowed to challenge Sanderson's standing because Ford impliedly authorized ADOT to send a notice to Sanderson by identifying Sanderson as an existing dealership in the Phoenix market. The requirements for standing to object in this context are statutory. A franchisee with the same line-make within the same community as or within ten miles of the proposed dealership is entitled to notice. However, if the franchisee objects, it still must present evidence to ADOT that it is located within the same community as or within ten miles of the proposed dealership in order to have standing to object. A.R.S. §§ 28–4454 to 28–4456. The fact that a notice was sent does not determine the issue of standing.

¶ 21 Ford notified ADOT of its intent to establish a new dealership and that there were five dealerships of the same line-make in the Phoenix metropolitan area. Two of the five were located in the City; three were not. Ford asked ADOT to "proceed as required" pursuant to A.R.S. § 28–4453 and to notify Ford when the notices were mailed. Ford did not indicate, let alone concede, in the letter that any of the five dealerships had standing to object. Two weeks after ADOT mailed the notices and a letter to Ford advising it that the notices had been sent, Ford wrote ADOT stating that it did not believe that any dealer was entitled to notice given the location of the proposed dealership and asking ADOT to withdraw all notices in accordance with Arizona law.

¶ 22 We construe nothing that Ford did as a concession that Sanderson had standing to object or as a waiver of its right to challenge Sanderson's standing. While Sanderson argues that equitable principles should apply to preclude Ford's challenge, it offers no legal support for its position. When rights are defined by statute, equity has no power to change those rights. *Maricopa County Juv. Action No. JV–128676,* 177 Ariz. 352, 356, 868 P.2d 365, 369 (App.1994). Given that even those entitled to notice of a proposed new dealership must prove standing, we find no basis for concluding that Ford's letter to ADOT identifying Sanderson as a dealer in the Phoenix metropolitan area, which letter resulted in an ADOT notice be-

---

7. Although Sanderson argues that the future annexation of Chauncey Ranch supports the position that the development is part of the Phoenix community under a geographic interpretation, Sanderson expressly declines to argue that it has standing based on the future annexation.

ing sent to Sanderson, relieved Sanderson of the statutory requirement that it prove that it had standing to object to Ford's proposed new Lincoln Mercury dealership.

### CONCLUSION

¶ 23 "Community," as defined by A.R.S. § 28–4301(5), is unambiguous. Applying, then, A.R.S. § 28–4453 *et seq.*, the statutory scheme regarding the location of new motor-vehicle franchises for the same line-make, the conclusion must be that Sanderson, despite its physical location within the exterior boundaries of the City of Phoenix, is not within the same "community" as Ford's new dealership, located on a Maricopa County island within those same exterior boundaries. Therefore, as lawfully challenged by Ford, Sanderson lacked standing to object to Ford's plan to establish the new dealership. The judgment is affirmed.

CONCURRING: SHELDON H. WEISBERG, Judge and WARREN J. GRANVILLE, Judge Pro Tempore.*