90 P.3d 206

**STATE of Arizona, Appellee,**

v.

**Trisha D. NELSON, Appellant.**

**No. 1 CA–CR 03–0469.**

Court of Appeals of Arizona,
Division 1, Department A.

May 18, 2004.

Terry Goddard, Attorney General, By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Cari McConeghy–Harris, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Richard D. Coffinger, Glendale, Attorney for Appellant.

## OPINION

PORTLEY, Judge.

¶ 1 Trisha D. Nelson challenges the lawfulness of the traffic stop that led to her conviction for aggravated driving while under the influence. Specifically, she questions the authority of the officer who made the stop and claims that the trial court committed reversible error by denying her motion to suppress. We conclude that the trial court properly denied the motion to suppress and hold that an officer, employed by the governing body of an Indian tribe and certified by the Arizona Peace Officer Standards and Training Board, may conduct a brief stop and detention of a vehicle off the reservation, while engaged in the scope of employment. *See* Ariz.Rev.Stat. ("A.R.S.") § 13–3874(A) (2001).

## BACKGROUND

¶ 2 During the early morning of February 2, 2003, a police dispatcher alerted officers of a possible drunk driver traveling northbound on Horne Road in Mesa, Arizona. While outside the reservation, an officer employed by the Salt River Pima–Maricopa Indian Community observed a vehicle fitting the description, activated his overhead lights and siren, and initiated a stop. When the vehicle stopped, the officer approached the driver, Nelson, and requested her driver's license and registration. Within minutes, officers from the Mesa Police Department arrived and took control of the investigation. Subsequent testing revealed that Nelson's blood alcohol content was 0.184.

## DISCUSSION

¶ 3 Nelson filed a motion to suppress arguing that the evidence seized was the result of an unlawful investigatory stop. *See* Ariz. R.Crim. P. 16.2. She alleged that the stop was unlawful because the officer was neither in "fresh/hot" pursuit nor cross-deputized by the Arizona Department of Public Safety, the Maricopa County Sheriff's Office or the Mesa Police Department. *State v. Gonzalez–Gutierrez,* 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996) ("[The] investigatory stop of a motor vehicle constitutes a seizure under the Fourth Amendment[.]"); *Rodriguez v. Arellano,* 194 Ariz. 211, 215, ¶ 12, 979 P.2d 539, 543 (App.1999) ("[A] defendant who establishes that evidence was seized pursuant to a warrantless search has satisfied the burden of going forward under [Arizona Rule of Criminal Procedure 16.2] and has triggered the State's burden of proving the lawfulness of the acquisition of the challenged evidence."). The State requested that the motion be denied because the officer was certified by the Arizona Peace Officer Standards and Training Board ("AZ POST"). After a suppression hearing, the trial court denied the motion, finding that the AZ POST certification gave the officer statutory authority to initiate the stop.

¶ 4 Nelson renews her arguments on appeal. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 and 13–4033(A) (2001). "We review the trial court's ruling [on a motion to suppress] for a clear abuse of discretion, considering only the evidence presented at the suppression hearing. While we view this evidence in the light most favorable to sustaining the trial court's ruling, we review de novo the court's legal conclusions." *State v.*

*Schinzel,* 202 Ariz. 375, 378, ¶ 12, 45 P.3d 1224, 1227 (App.2002) (citations omitted). Here, the relevant facts are undisputed. The parties agree that the stop occurred outside the reservation by a law enforcement officer employed by a tribal governing body and certified by the AZ POST.

¶ 5 Generally, officers acting outside the territorial limits of the jurisdiction under which they hold office cannot officially stop or apprehend an offender. Russell G. Donaldson, Annotation, *Validity, in State Criminal Trial, of Arrest Without Warrant by Identified Peace Officer Outside of Jurisdiction, When Not in Fresh Pursuit,* 34 A.L.R.4th 328 (1984 & Supp.2003). Officers, however, may be authorized by statute to act. *Id.* at 333. This appeal focuses on the scope of authority granted by A.R.S. § 13–3874(A).

¶ 6 Section 13–3874(A) provides that:

> While engaged in the conduct of his employment any Indian police officer who is appointed by the bureau of Indian affairs or the governing body of an Indian tribe as a law enforcement officer and who meets the qualifications and training standards adopted pursuant to § 41–1822 shall possess and exercise all law enforcement powers of peace officers in this state.

Citing numerous cases and legal treatises, Nelson contends that § 13–3874 does not "unambiguously grant an AZ POST certified Indian tribal police officer unlimited extraterritorial jurisdiction to make traffic stops of vehicles off the reservation when the officer is neither cross-deputized nor in 'fresh' or 'hot' pursuit." She further argues that the trial court "erroneously ruled that th[e] statute was unambiguous and therefore, ... refused to consider [her] arguments regarding the [statute's] legislative history[.]"

¶ 7 We review matters of statutory construction and interpretation, as questions of law, de novo. *Ariz. Dep't of Revenue v. Dougherty,* 200 Ariz. 515, 517, ¶ 7, 29 P.3d 862, 864 (2001). "[T]he best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). "Therefore, if we find no ambiguity in the

statute's language, we must give effect to that language and we may not employ other rules of construction to interpret the provision." *Id.* "Only if the legislative intent is not clear from the statute do we consider other factors such as the statute's context, subject matter, historical context, effects and consequences, and spirit and purpose." *Sanderson Lincoln Mercury, Inc. v. Ford Motor Co.,* 205 Ariz. 202, 205, ¶ 11, 68 P.3d 428, 431 (App.2003).

¶ 8 Without specifying the alleged ambiguity, Nelson baldly asserts that the statute is ambiguous. She writes, "Due to the ambiguity in A.R.S. § 13–3874, regarding the nature and extent of an Indian police officer's criminal jurisdiction **off the reservation,** courts may ascertain the legislative intent by looking to the statutory scheme as a whole, and the statute's context, subject matter, historical background, effects and consequences." She appears to argue that the phrase "shall possess and exercise all law enforcement powers of peace officers" is ambiguous.

¶ 9 "An ambiguity in a statute is 'not simply that arising from the meaning of particular words, but includes such as may arise in respect to the general scope and meaning of a statute when all its provisions are examined.'" *State v. Sweet,* 143 Ariz. 266, 269, 693 P.2d 921, 924 (1985) (quoting 73 Am. Jur.2d *Statutes* § 195). "An ambiguity may also be found to exist where there is uncertainty as to the meaning of the terms of a statute." *Sweet,* 143 Ariz. at 269, 693 P.2d at 924. "Words and phrases in a statute are [ ] given their ordinary meaning unless it appears from the context of the statute or from that of the act of which the statute is a part that a different meaning is intended." *State v. Takacs,* 169 Ariz. 392, 397, 819 P.2d 978, 983 (App.1991).

¶ 10 Because well-informed individuals would not reasonably disagree as to the statute's meaning, *Higginbottom v. State,* 203 Ariz. 139, 142, ¶ 13, 51 P.3d 972, 975 (App. 2002), we find no ambiguity. Under the express language of § 13–3874(A), an Indian police officer, while engaged in the conduct of his/her employment, "shall possess and exercise *all* law enforcement powers of peace

officers in this state" if certain requirements are met. (Emphasis added.) The Indian police officer must be appointed by the Bureau of Indian Affairs or the governing body of an Indian tribe as a law enforcement officer and meet the qualifications and training standards adopted by the AZ POST. *See* A.R.S. §§ 13–3874(A), 41–1822 (2004) (authorizing the AZ POST to prescribe the minimum qualifications and training standards with respect to peace officer training and certification).

¶ 11 The AZ POST record accompanying the State's response indicates that the officer was, in fact, a sergeant employed by the Salt River Pima–Maricopa Indian Community with active AZ POST certification. The record also states that the officer was in good standing and categorized as a full-authority peace officer. " 'Full-authority peace officer' means a peace officer whose authority to enforce the laws of this state is not limited by [the AZ POST]." Ariz. Admin. Code ("A.A.C.") R13–4–101.[1]

¶ 12 When "the legislature has clearly spoken on a matter within its domain, its word constitutes public policy on that subject and controls, assuming no constitutional impediments exist." *Taylor v. Graham County Chamber of Commerce,* 201 Ariz. 184, 191, ¶ 27, 33 P.3d 518, 525 (App.2001). Absent any ambiguity, we presume that the legislature has said what it means and apply the text of the statute as written. *Hughes v. Jorgenson,* 203 Ariz. 71, 73, ¶ 11, 50 P.3d 821, 823 (2002). In light of § 13–3874(A), we conclude that the trial court properly denied Nelson's motion to suppress. A law enforcement official employed by the governing body of an Indian tribe and certified by the AZ POST may conduct a brief stop and detention of a vehicle, in accordance with *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), outside the reservation, while engaged in the scope of employment.[2] *See State v. Altieri,* 191 Ariz. 1, 2, ¶ 8, 951 P.2d 866, 867 (1997) ("A law enforcement officer may stop a vehicle when there are objective facts available raising a suspicion of criminal activity.").

■ ¶ 13 Nelson argues that, although the officer was AZ POST certified, he was not cross-deputized and was not in hot pursuit and therefore lacked the authority to make the stop. We disagree.

Cross-deputization agreements have been developed to coordinate arrest and detention practices between tribal and nontribal communities, often in answer to the common need for effective response by law enforcement officials in an emergency situation.

. . . .

Formal agreements between state and tribal governments are the most common form of cross-deputization agreement[s]. The formal agreements usually comprise the qualifications for becoming a peace officer, the criteria for training, and measures to protect officers from personal liability. Other criminal enforcement agreements involve hot pursuit, and sharing and coordination of jails, detention centers, radio equipment, recordkeeping, and investigation information.

*American Indian Law Deskbook: Conference of Western Attorneys General* 412–13 (Joseph P. Mazurek et al. eds., 2nd ed.1998). Cross-deputization agreements and hot pursuit are the most common methods of granting authority to tribal officers. *Id.; see also United States v. Patch,* 114 F.3d 131, 134 (9th Cir.1997) ("Under the doctrine of hot pursuit, a police officer who observes a traffic violation within his jurisdiction to arrest may pursue the offender into [or off] Indian coun-

---

1. The categories for which certified status may be granted are: (1) Full-authority peace officer, (2) Specialty peace officer, (3) Limited-authority peace officer, and (4) Limited-correctional peace officer. A.A.C. R13–4–103(D). " 'Limited-authority peace officer' means a peace officer who is certified to perform the duties of a peace officer only in the presence and under the supervision of a full-authority peace officer[;]" and " '[s]pecialty officer' means a peace officer whose authority is limited to enforcing specific sections of the Arizona Revised Statutes or Arizona Administrative Code, as specified by the appointing agency's statutory powers and duties." A.A.C. R13–4–101.

2. Because the officer involved in this case was AZ POST certified, we express no opinion as to whether a non-certified tribal officer could make a valid stop off the reservation.

try to make the arrest."). But they are not the only means. Other methods, like AZ POST certification, provide an equal and distinct manner for the grant of such authority. Given the legislature's authority to determine who may enjoy "peace officer" status, we need not address Nelson's argument that earlier statutes included a mutuality requirement not present in § 13–3874.

¶ 14 Nelson, citing to Article 20, Fourth Paragraph, of the Arizona Constitution, asserts that such a construction conflicts with the precepts of Indian tribal sovereignty.[3] Once again, we disagree. No federal or state law is violated when the state action does not interfere with reservation self-government. *See, e.g., State v. Lupe*, 181 Ariz. 211, 214, 889 P.2d 4, 7 (App.1994). When "the activity in question moves off the reservation[,] the State's governmental and regulatory interest increases dramatically, and federal protectiveness of Indian sovereignty lessens." *Smith Plumbing Co. v. Aetna Cas. & Sur. Co.*, 149 Ariz. 524, 530, 720 P.2d 499, 505 (1986). Here, Nelson fails to indicate the alleged intrusion and we find no imposition on the tribe's retained sovereignty.

¶ 15 Finally, Nelson argues that by failing to "include[ ] Indian police officers [in] the statutory definition of 'peace officers,' the Arizona Legislature indicated its intent to exclude Indian police officers from being 'peace officers.'" *See* A.R.S. § 1–215(28) (2002) (definition of "peace officers").[4] She maintains that "[t]his legislative intent is also indicated by the fact that, in spite of numerous subsequent amendments to the definition of 'peace officers,' that have expanded the list of law enforcement officers included within the definition, no subsequent amendment has included Indian police officers." *See, e.g.,* 1995 Ariz. Sess. Laws, ch. 287, § 1; 2000 Ariz. Sess. Laws, ch. 142, § 1. We disagree. Because the language of § 13–3874(A) is clear and unambiguous, we need not consider the legislative history of other related statutes. *Sanderson Lincoln Mercury, Inc.*, 205 Ariz. at 205, ¶ 11, 68 P.3d at 431. Even if we did, one permissible explanation for omitting Indian police officers is that the legislature did not desire to bestow unrestricted authority on all tribal officers, but instead wanted to limit the exercise of power to those who met the prescribed requirements. *See State v. Ward*, 200 Ariz. 387, 388, ¶ 3, 26 P.3d 1158, 1159 (App.2001) ("Generally, when a court construes two or more statutes, it should interpret them harmoniously so as to give effect to all statutes involved.").

## CONCLUSION

¶ 16 The legislature, by enacting A.R.S. § 13–3874, clearly intended to allow AZ POST certified tribal officers to "possess and exercise all law enforcement powers of [state] peace officers[,]" thereby fostering cooperation between police officers in adjoining jurisdictions. Accordingly, we affirm the trial court's order denying Nelson's motion to suppress.

CONCURRING: JON W. THOMPSON, Presiding Judge and ANN A. SCOTT TIMMER, Judge.

---

3. The constitutional provision entitled "Public lands; Indian lands" reads:

   The people inhabiting this State do agree and declare that they forever disclaim all right and title to the unappropriated and ungranted public lands lying within the boundaries thereof and to all lands lying within said boundaries owned or held by any Indian or Indian tribes, the right or title to which shall have been acquired through or from the United States or any prior sovereignty, and that, until the title of such Indian or Indian tribes shall have been extinguished, the same shall be, and remain, subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States.

4. Subsection 28 defines "Peace officers" as:

   [S]heriffs of counties, constables, marshals, policemen of cities and towns, commissioned personnel of the department of public safety, peace officers who are appointed by a multi-county water conservation district and who have received a certificate from the Arizona peace officer standards and training board, police officers who are appointed by community college district governing boards and who have received a certificate from the Arizona peace officer standards and training board and police officers who are appointed by the Arizona board of regents and who have received a certificate from the Arizona peace officer standards and training board.