NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MATTHEW MARSHALL PALMER, *Appellant.*

No. 1 CA-CR 18-0812
FILED 7-7-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201701502
The Honorable Richard Weiss, Judge *Retired*

**REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill Evans
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Acting Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Diane M. Johnsen[1] and Judge D. Steven Williams[2] joined.

---

**M O R S E**, Judge:

**¶1**　　　　Matthew Palmer appeals his convictions and sentences for two counts of aggravated assault.  He argues the trial court erred in denying his challenge to the State's peremptory strike of an African-American prospective juror under *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). We agree that the trial court improperly considered the order of the prosecutor's peremptory strikes and, given the ambiguity of the remainder of the explanation for its decision to uphold the strike, we remand this matter for further proceedings.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　In July 2018, Palmer was convicted of two counts of aggravated assault against a detention officer that occurred in October 2017 while he was being held in the Mohave County Jail.  The facts relevant to the appeal are limited to what Palmer asserts were improprieties in the jury selection process at his trial.

---

[1]　　　　Judge Johnsen was a sitting member of this Court when the matter was assigned to this panel of the Court.  She retired effective February 28, 2020.  In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12-145, Chief Justice of the Arizona Supreme Court has designated Judge Johnsen as a judge *pro tempore* in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during her term in office.

[2]　　　　Judge Williams replaces the Honorable Kenton D. Jones, who was originally assigned to this panel.  Judge Williams has read the briefs and reviewed the record.

¶3        During jury selection, jurors were asked to provide background information about themselves. On this point, the record contains the following exchange:

THE COURT: . . . And we have a clipboard, and on that clipboard there's a number of questions.

The first one deals with your address. We don't need to know the number of the street or your house number, apartment number, or street number. All we need to know is what town you're from, like Kingman, Bullhead, Lake Havasu, any of the other towns in Mohave County.

If you're retired, let us know what occupation you retired from. If your spouse is retired, let us know what occupation your spouse may have retired from.

And if you've ever served on a jury before, tell us about when and where that may have been, what the outcome of that case may have been and whether or not you were the foreperson of that jury panel.

And, [Prospective Juror 1], you're in the hot seat, so you get to go first. If you would please stand and answer those questions.

But you might be looking for your glasses, are you?

PROSPECTIVE JUROR [1]: I was looking for a pen.

THE COURT: I don't know that you need a pen.

PROSPECTIVE JUROR [1]: Yeah.

THE COURT: I think it's just on the top there. Oh, you don't need a pen.

PROSPECTIVE JUROR [1]: Okay.

THE COURT: It's just the question in that glassy type envelope. So right there. Just right there.

PROSPECTIVE JUROR [1]: Oh, just right here.

THE COURT: Yeah, that's it.

PROSPECTIVE JUROR [1]: Oh, okay.

¶4             From this exchange, it appears Prospective Juror 1 believed she was being asked to write down her responses to the questions listed on the clipboard. After the trial court clarified she was to answer the questions orally, Prospective Juror 1 provided all the requested information without incident or apparent confusion. She stated her name, the city in which she resided, that she was retired, recently divorced and had no children, that her ex-spouse's retirement or occupation was "[n]othing," and that she previously served as a juror, but was not the foreperson, in a civil case in California in which a defense verdict was rendered. Prospective Juror 1 separately stated there was "[n]othing at all" from her experience serving as a juror in the California civil case that would affect her ability to be a fair and impartial juror.

¶5             After the jury panel was passed for cause, the State used a peremptory strike against Prospective Juror 1. After Palmer challenged the strike as race-based under *Batson*, the trial court asked the prosecutor to provide a reason for striking Prospective Juror Number 1, whom it noted was "the only person of African-American [race] on the panel, and probably the only one on a panel in Mohave County for years." The prosecutor responded:

> The State's reason for striking that juror was not based on her race or ethnicity. The State's biggest reason for striking that juror was in part due to her confusion in following the jury instructions initially. That concerned the State given the complexity of the jury instructions that she will receive at the end of the case. So it was for those reasons that the State used its [peremptory] strike.

¶6             The trial court sought clarification:

> THE COURT: All right. So what was the confusion? When she got the clipboard?
>
> [THE PROSECUTOR]: Yes, Your Honor.
>
> THE COURT: And so thereafter didn't [Prospective Juror 1] answer the questions?
>
> [THE PROSECUTOR]: She did answer the questions, Your Honor. Again, it comes down to we have six strikes, and the State, wanting to make sure that we get the best jury panel

that will be the most fair and impartial and is able to follow directions clearly is the State's biggest concern. So it was for that reason that we used a strike.

THE COURT: All right. So you didn't think that that was just [Prospective Juror 1] being nervous and being the first one to go and not necessarily understanding it? And hasn't that happened to most number ones?

[THE PROSECUTOR]: That's possible, Your Honor. And certainly if that's the case, that's the case. However, again, as we're narrowing down the strikes the State is using, the State is becoming more and more picky about which jurors are left on the panel, so the State decided to strike [Prospective Juror 1].

THE COURT: And do you know in your strikes whether or not she was the first one you struck —

[THE PROSECUTOR]: No.

THE COURT: — or the second, third, fourth, fifth, sixth.

[THE PROSECUTOR]: I believe she was the fourth, Your Honor. The fourth or fifth.

¶7          Defense counsel's observations of Prospective Juror 1 also differed from the prosecutor's.

Judge, obviously, I think the record should reflect that the lady was I think clearly African-American, and to the best of my knowledge, there were no other African-Americans in the courtroom. We did have a couple Hispanic gentlemen. I believe perhaps one Hispanic lady.

[Prospective Juror 1] — as you mentioned, was the very first juror, and she was handed a clipboard. The [c]ourt did instruct her to go ahead and read off that and give some instruction and basically to read off the particular clipboard the information as requested. She said there was no pen there. I think she was confused because she's never sat on the jury, I don't think, about she was supposed to fill something out.

The [c]ourt made it clear that, no, I just want you to answer the questions on the clipboard. After about 10 seconds, she figured it out from the [c]ourt's instruction and did that.

And I didn't see [Prospective Juror 1] demonstrate any other confusion during jury instruction at all.

Her answers were clear, were thoughtful. She even made — even cracked up about her ex-husband. She was asked what her ex-husband did for a living. Basically[,] she said nothing with a chuckle, which got a chuckle out of the jury. The lady seemed engaged and intelligent and certainly could handle the jury instructions.

Everybody else had the benefit of seeing her go first, and so when they were handed the clipboard, they knew what to do. She had no one before her. If that's the only reason the State has got, again, I would — respectfully with counsel, I don't believe counsel is a racist. I'm not making that claim, of course, at all. I'm just saying I think this lady deserves to stay on the jury if that's the only reason.

When asked if she had anything further to add, the prosecutor responded:

Not really, Your Honor. Again, the State used its [peremptory] strike to strike [Prospective Juror 1], not because of her race or ethnicity, but based on the observations that the State made and the State's end goal of trying to get the most fair and impartial jury panel at the end of the day.

¶8 The trial court allowed the preemptive strike to stand, reasoning:

Well, the [c]ourt may agree that a fourth or fifth strike probably takes it out of at some level whether it's race or ethnicity based.

The [c]ourt really is in a different position than counsel for the State and their interpretation of events might be different than what the [c]ourt's interpretation of the events may have been about whether there was any confusion that occurred.

One of [Prospective Juror 1's] other answers indicated that she did serve on I believe it was a civil jury back in California

sometime ago.  I believe she is a qualified juror, and when you deal with [peremptory] strikes, it could be any reason as long as it's not based on race or ethnicity.

The [c]ourt is not swayed that the strike of [Prospective Juror 1] was not [sic] based on race or ethnicity but for a reason independent of that, whether the [c]ourt agrees with the assumptions of the State or not.

**¶9**　　　　Prospective Juror 1 was dismissed, the jury was seated and sworn, and Palmer was ultimately found guilty of two counts of aggravated assault.  The trial court sentenced Palmer as a non-dangerous, non-repetitive offender to concurrent terms of imprisonment, the longer of which was eleven years, and credited him with 393 days of presentence incarceration.  Palmer timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶10**　　　　The sole issue presented on appeal is whether the trial court erred in denying Palmer's *Batson* challenge to the State's peremptory strike of Prospective Juror 1.

### I.　　**Standard of Review.**

**¶11**　　　　"When reviewing a trial court's ruling on a *Batson* challenge, we defer to its factual findings unless clearly erroneous, but review its legal determinations de novo." *State v. Gay*, 214 Ariz. 214, 220, ¶ 16 (App. 2007). And, in reviewing a *Batson* challenge, "all of the circumstances that bear on the issue of racial animosity must be consulted." *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008).

### II.　　*Batson* **Challenges Generally.**

**¶12**　　　　"The Equal Protection Clause of the Fourteenth Amendment prevents peremptory strikes of prospective jurors solely based upon race." *Gay*, 214 Ariz. at 220, ¶ 17 (citing *Batson*, 476 U.S. at 89). "Purposeful racial discrimination in selection of the [jury] violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson*, 476 U.S. at 86. "Jury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, or predisposition about the defendant's culpability." *Powers v. Ohio*, 499 U.S. 400, 411-12 (1991) (citations omitted).  "Racial discrimination in selection of jurors harms not

only the accused whose life or liberty they are summoned to try[,]" but also "undermine[s] public confidence in the fairness of our system of justice." *Batson*, 476 U.S. at 87. "Exclusion of a single juror in violation of *Batson* requires a new trial." *State v. Cruz*, 175 Ariz. 395, 400 (1993) (collecting cases).

**¶13** *Batson* sets forth a three-step process to determine if a peremptory strike violates equal protection. *Gay*, 214 Ariz. at 220, ¶ 17.

**¶14** "First, the party challenging the strike must make a prima facie showing that the strike was based on race." *Id.* There is no dispute that Palmer made that showing.

**¶15** In the second step, "the burden shift[s] to the prosecutor to give a race-neutral basis" for striking the prospective juror. *State v. Newell*, 212 Ariz. 389, 401, ¶ 54 (2006). That explanation "must be more than a mere denial of improper motive, but it need not be 'persuasive, or even plausible.'" *State v. Lucas*, 199 Ariz. 366, 368, ¶ 7 (App. 2001) (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam)). Here, the prosecutor satisfied her burden under the second step of *Batson* by offering a facially race-neutral basis for striking Prospective Juror 1 — her purported inability to follow the assertedly complex jury instructions she would receive at the end of this case based upon her display of confusion "[w]hen she got the clipboard."

**¶16** In the third and final step of *Batson*, "the party challenging the strike must persuade the trial court that the proffered race-neutral explanation is pretextual" for purposeful racial discrimination. *Gay*, 214 Ariz. at 220, ¶ 17; *see also Snyder*, 552 U.S. at 484-85. This third step is significant because "the trial court evaluates the *credibility* of the [S]tate's proffered explanation[.]" *Gay*, 214 Ariz. at 220, ¶ 17 (emphasis added). In evaluating the credibility of proffered explanations, the court is required "to evaluate the sincerity of the prosecutor as well as the behavior of the jurors" by "considering such factors as the prosecutor's demeanor; . . . how reasonable, or how improbable, the explanations are; and . . . whether the proffered rationale has some basis in accepted trial strategy." *Id.* at 220-21, ¶¶ 17, 19 (quoting *Miller-El v. Cockrell (Miller-El I)*, 537 U.S. 322, 339 (2003)).

**¶17** Where, as here, the prosecutor's explanation rests entirely on the observations that the prosecutor made about a prospective juror, "the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor c[ould] credibly be said to have exhibited the basis for the strike attributed to the

[prospective] juror by the prosecutor." *Snyder*, 552 U.S. at 477. Because "race-neutral reasons for peremptory challenges often invoke a [prospective] juror's demeanor (e.g., nervousness, inattention)," the "court's firsthand observations [are] of even greater importance." *Id.* To be sure, the third step of *Batson* may require trial judges to make uncomfortable and unpleasant inquires so as to uncover counsel's true reasons for peremptorily striking a juror. *State v. Porter*, 248 Ariz. 392, 397, ¶ 14 (App. 2020). Nevertheless, "'if *Batson* is to be given its full effect, trial courts *must* make precise and difficult inquires to determine if the proffered reasons for a peremptory strike are the race-neutral reasons they purport to be, or if they are merely a pretext for that which *Batson* forbids' . . . ." *Id.* (quoting *Coombs v. Diguglielmo*, 616 F.3d 255, 264 (3d Cir. 2010)).

¶18　　　　Ultimately, whether the explanation for a peremptory strike is a pretext for racial discrimination is a question of fact. *Hernandez v. New York*, 500 U.S. 352, 364-65 (1991) (plurality opinion). But while the "'trial court is in a better position to assess' credibility than we are, [and] its 'finding at this step is [thus] due much deference,'" *Gay*, 214 Ariz. at 220, ¶ 17 (quoting *Newell*, 212 Ariz. at 401, ¶ 54), "[d]eference does not by definition preclude relief," *Miller-El I*, 537 U.S. at 340. Such findings may be set aside if "clearly erroneous." *Newell*, 212 Ariz. at 400, ¶ 52; *see also State v. Hernandez*, 170 Ariz. 301, 304-05 (App. 1991) (collecting cases). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with [a] definite and firm conviction that a mistake has been committed." *State v. Lupe*, 181 Ariz. 211, 213 (App. 1994) (quoting *State v. Burr*, 126 Ariz. 338, 339 (1980)).

## III.　*Batson* **Applied.**

¶19　　　　The trial court here found that the peremptory strike of Prospective Juror 1 — the only African-American on the panel and, as the court observed, "probably the only one on a panel in Mohave County for years" — was not racially motivated. *See supra* ¶¶ 5, 8. But, reviewing the entire record, and particularly the court's explanation for its finding that the prosecutor struck the juror for a race-neutral reason, we are left with a definite and firm conviction that the trial court erred in evaluating whether the strike was for a race-neutral reason and remand for further factfinding.

¶20　　　　First, the trial court considered the prosecutor's use of the State's "fourth or fifth" peremptory strike against Prospective Juror 1 as evidence that the prosecutor's explanation was not "race or ethnicity based." This was error. Arizona law permits the State to exercise up to six peremptory strikes in criminal trials when the offense charged is not

punishable by death. Ariz. R. Crim. P. 18.4(c)(1)(B). The timing of the State's strike is irrelevant; any strike made with discriminatory intent violates a defendant's constitutional rights. *See Foster v. Chatman*, 136 S.Ct. 1737, 1747 (2016) (citing *Snyder*, 552 U.S. at 478).

**¶21** On this record, the trial court's error in attributing significance to the order of strikes requires remand because the trial court's statements and firsthand observations demonstrate that it had reservations about the prosecutor's explanation for striking Prospective Juror 1. *See Hernandez*, 500 U.S. at 367 ("The credibility of the prosecutor's explanation goes to the heart of the equal protection analysis[.]"). To support the strike, the prosecutor cited Prospective Juror 1's "confusion in following the jury instructions initially" — referring to the moment "[w]hen she got the clipboard" — as a basis for inferring she would be unable to follow directions "given the complexity of the jury instructions that she w[ould] receive at the end of the case." But the trial court stated it was "really in a different position than counsel for the State and their interpretation of events," particularly as to "whether there was any confusion that [in fact] occurred." As the trial court noted, Prospective Juror 1's momentary nervous confusion about whether she was to respond orally or in writing to the initial questions of the panel was typical of "most number ones." Consistent with the court's interpretation of events, we cannot conclude that the trial court would have accepted the prosecutor's stated reason without attributing weight to the order of the prosecutor's strikes.

**¶22** Moreover, remand is necessary because the record does not show the trial court found the prosecutor's reasoning sincere but erroneous. *See, e.g.*, *Aleman v. Uribe*, 723 F.3d 976, 980-84 (9th Cir. 2013) (affirming a finding of no purposeful discrimination where the prosecutor honestly but mistakenly attributed a troublesome comment by another juror to a Hispanic juror); *Lamon v. Boatwright*, 467 F.3d 1097, 1099, 1102 (7th Cir. 2006) (affirming a finding of no purposeful discrimination when the prosecutor struck "the only black member of the venire" because "even if possibly mistaken," the prosecutor honestly believed that further questioning of the juror would have been futile given his initial vague and unforthcoming responses to questions); *State v. Gonzalez-Sandoval*, 431 P.3d 850, 854-62 (Kan. 2018) (affirming a finding of no purposeful discrimination where the prosecutor "honestly but mistakenly believe[d]" that a juror with a Hispanic surname had not been candid during voir dire "about having been a witness or having been interviewed by law enforcement[,]" only to later find out and volunteer to the court that the proffered reasons were untrue).

¶23　　In contrast to the aforementioned cases, here, the trial court's explanation for upholding the peremptory strike suggests it failed to properly apply and understand its role in the third step of *Batson*. The court explained that "when you deal with [peremptory] strikes," the State can offer "any reason as long as it's not based on race or ethnicity . . . whether the [c]ourt agrees with the assumptions of the State or not." But a prosecutor's mere advancement of a reason unrelated to race or ethnicity is insufficient to defeat a *Batson* challenge. In the third step of *Batson*, it is the court's duty to evaluate the credibility of the asserted race-neutral explanation in determining whether the explanation is sincere or merely a ruse masking discriminatory motive. *See Gay*, 214 Ariz. at 220-21, ¶¶ 17, 19. Here, the court's statement contains a confusing double negative and is amenable to conflicting interpretations about whether the court accepted or rejected the State's explanation. We presume that in allowing the strike, the court must have accepted the sincerity of the State's proffered reason. *See State v. Ramirez*, 178 Ariz. 116, 128 (1994) ("[T]he trial court is presumed to know and follow the law."). But our review of the record provides little comfort and, at a minimum, the court did not perform its duty under *Batson* when it allowed the timing of the challenged strike to influence its decision. This is especially true where the court's observations did not directly support the prosecutor's explanation.

¶24　　In a footnote in its answering brief, the State asserts the fact that the prosecutor did not strike other minority jurors from the panel evinces a nondiscriminatory motive. To be sure, the record suggests there may have been "a couple Hispanic gentlemen . . . perhaps one Hispanic lady," in the jury pool. Nevertheless, the State cannot satisfy its obligation to provide a legitimate race-neutral explanation solely by pointing to the existence of other minorities it did not strike from the jury pool. *See Hardy*, 230 Ariz. at 285, ¶ 12. "[T]he Constitution forbids striking even a single prospective juror for a discriminatory purpose." *Snyder*, 552 U.S. at 478 (quoting *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994)).

¶25　　The State also cites several cases from other jurisdictions suggesting a prospective juror's confusion or inability to understand questions can constitute valid non-race-based reasons to exercise a peremptory strike. *State v. Hodge*, 726 A.2d 531, 547 (Conn. 1999) ("A prosecutor may challenge a juror who appears unable to understand questions or who demonstrates confusion.") (collecting cases); *State v. Carter*, 96 N.E.3d 1046, 1064-66, ¶¶ 49-51, 57-59 (Ohio Ct. App. 2017). But in those cases, either: 1) the prosecutor *and* the trial court observed the same behavior or demeanor that supported the court's nondiscriminatory finding, *Carter*, 96 N.E.3d at 1064-65, ¶¶ 50-51; *see also Hernandez*, 170 Ariz.

at 304-05; or, 2) the record clearly illustrated the prospective juror's problematic responses to questions about the applicable law or the applicable standard of proof, or inability to follow the instructions faithfully, *Hodge*, 726 A.2d at 546-48; *Carter*, 96 N.E.3d at 1064-65, ¶¶ 50-51; *see also State v. Decker*, 239 Ariz. 29, 31-32, ¶¶ 5-11 (App. 2016) (finding the trial court did not err by denying a defendant's *Batson* challenge where "[t]he judge confirmed the prosecutor's observation [that the juror failed] to follow the court's instructions [to remain outside the courtroom during a break] and implicitly found credible the prosecutor's account of [the juror's] dozing and inattentiveness[.]").  Neither of these scenarios applies here.

**¶26**      In sum, the trial court erred in fulfilling its duty in the third step of *Batson* by considering the timing of the prosecutor's peremptory strike of Prospective Juror 1 as evidence of a nondiscriminatory motive.  As a result, and given the ambiguity of the remainder of the court's explanation for its decision to uphold the strike, we must remand so the trial court may apply *Batson* without attributing significance to the order of the prosecution's strikes.  *See Porter*, 248 Ariz. at 400, ¶ 22.  On remand, if the trial court rejects the State's explanation or is unable "to make reliable, fully informed findings under the *Batson* framework," the trial court must vacate Palmer's convictions and hold a new trial.  *Id.*

## CONCLUSION

**¶27**      We remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:    AA

12