888 P.2d 777

**MAIL BOXES, etc., U.S.A.,**
Petitioner Employer,

**State Compensation Fund,**
Petitioner Carrier,

v.

**INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,**

Patrick Loser, Respondent Employee.

No. CV–93–0354–PR.

Supreme Court of Arizona,
En Banc.

Jan. 24, 1995.

Long, Lundmark & Poppe by James B. Long, Phoenix, for petitioner employer/carrier.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Jerome Gibson Stewart Friedman Stevenson & Engle by Darryl Engle and Don F. Schaar, Phoenix, for Patrick Loser.

### OPINION

MARTONE, Justice.

We are asked to define the term "actual average monthly wage" as it appears in A.R.S. § 23–901(5)(i) for purposes of calculating a sole proprietor's permanent disability benefits. We hold that a sole proprietor's "wage" is measured by the market value of his or her services to the business and affirm the administrative law judge's award.

### BACKGROUND

In April 1989, Patrick Loser bought a franchise known as Mail Boxes, Etc., U.S.A. On April 10, 1989, he obtained workers' compensation insurance through the State Compensation Fund (Fund). Loser's policy included sole proprietorship coverage authorized by A.R.S. § 23–901(5)(i). He was assessed a premium based on an assumed average monthly wage of $1,650.

Loser worked at his business six days a week for approximately fifty-five hours per week. He worked even more during the Christmas season. The business was Loser's primary source of income. While working on December 12, 1989, he fell and injured both knees. He required surgery and became permanently impaired. He sold his business in August 1990 because his injuries would have made it necessary for him to hire a store manager at approximately $8.00 per hour.

After the accident, Loser filed a workers' compensation claim, which was accepted for benefits. On June 18, 1990, his average monthly wage for purposes of temporary benefits was fixed at $1,650 per month, the amount for which Loser had been paying premiums. In 1991, Loser's claim was closed with a permanent impairment. Under the contract, which tracks the language of the statute, permanent disability benefits are to be based on the lesser of the "assumed

monthly wage" and the insured's "actual average monthly wage." The Fund determined that Loser had earned no wages in 1989 and thus recalculated his average monthly wage at $0 per month. The Fund denied Loser all permanent disability benefits.

Loser requested a hearing before an administrative law judge. He testified that after reading the application for sole proprietorship coverage, he understood that if he were injured he would receive $1,650 per month. Deborah Fagan, the accountant for Loser's business, testified that sole proprietors do not receive wages but take out "draws" from the business. She stated that in December 1989, Loser took a $3,400 draw as a partial repayment of a $20,000 personal loan he had made to the business when he purchased it. She testified that from April 1989 through December 1989 the business showed a net loss of $3,976. However, considering the $10,716.20 in capital expenditures Loser made during that same period, the business actually showed a $6,740.20 profit during 1989.

On the other hand, Steven Kopp, the Fund's accountant, indicated that a sole proprietor's "wage" is basically the business's "earned income," or profit, and concluded that Loser had no earned income in 1989. Kopp testified that the $3,400 draw did not represent earned income but was part of the initial $20,000 loan Loser had made to the business. In fact, Kopp stated that any money that Loser took out of the business in 1989, including funds used for capital expenses, was part of the original loan. Although Kopp agreed that Loser made a profit in December, he stated that it was insufficient to offset the losses incurred from April through November 1989.

The administrative law judge agreed that Loser's business sustained 1989 losses in excess of $3,000. However, he entered an award setting Loser's average monthly wage at $1,650 per month for purposes of permanent disability benefits. He found that even though the business did not show a profit in 1989, losses would have increased by approximately $1,733.32 per month if Loser had operated only as an owner or investor in the

business.[1] Because \$1,733.32 was greater than the assumed average monthly wage of \$1,650, he chose the lesser of the two figures, as required by § 23–901(5)(i), and held that no recalculation was necessary. The award was affirmed on administrative review. The Fund sought review by special action to the court of ·appeals.

A divided court of appeals set aside the award. *Mail Boxes, Etc., U.S.A. v. Industrial Comm'n*, 178 Ariz. 222, 871 P.2d 1158 (App.1993). It found that a sole proprietor's "wage" is the earned income of the business, and because Mail Boxes had no earned income in 1989, Loser had an "actual average monthly wage" of \$0. It held that Loser was not entitled to permanent disability benefits. We granted review.

## ANALYSIS

Under A.R.S. § 23–901(5)(i), compensation for a sole proprietor's permanent disability is the lesser of the "actual average monthly wage" or the agreed upon "assumed monthly wage."[2] In order to provide coverage to sole proprietors, the legislature defined a sole proprietor as an "employee" who earns a "wage" by which benefits under that coverage may be calculated.

■ In reality, sole proprietors are not employees and do not earn wages. A sole proprietor can never be an employee of the business he or she creates because a sole proprietor and the business are one legal entity. A person cannot be one's own employee. Nor does a sole proprietor receive a "wage" from the business for his or her services. Thus, using employee language in a nonemployee setting creates definitional problems. There is no "actual average monthly wage." But because a sole proprietor's benefits are to be based on the lesser of the "assumed monthly wage" and "actual average monthly wage," we must give some rational meaning to the term.

■ The primary rule of statutory construction is to find and give effect to legislative intent. *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). We look first to the statute's words. *Kriz v. Buckeye Petroleum Co.*, 145 Ariz. 374, 377, 701 P.2d 1182, 1185 (1985). Words have their ordinary meaning unless the context of the statute requires otherwise. *Carrow Co. v. Lusby*, 167 Ariz. 18, 20, 804 P.2d 747, 749 (1991). Where language is unambiguous, it is normally conclusive, absent a clearly expressed legislative intent to the contrary. *Corbin v. Pickrell*, 136 Ariz. 589, 592, 667 P.2d 1304, 1307 (1983).

■ The Fund argues that the term "actual average monthly wage" is clear and unambiguous, and that a sole proprietor's "wage" is the business's "earned income." We disagree. Wages and earned income are different accounting terms. The underlying purpose of the Workers' Compensation Act, of which § 23–901(5)(i) is a part, is to compensate an employee for lost earning capacity and to prevent the injured employee and dependents from becoming ·public charges during the period of disability. *Senor T's Restaurant v. Industrial Comm'n*, 131 Ariz. 360, 363, 641 P.2d 848, 851 (1982). With that purpose in mind, a sole proprietor's "wage" cannot mean the business's "earned income." Applying the "earned income" definition in this case would mean the employee paid his

---

1. The administrative law judge reached this number by multiplying a wage of \$8.00 an hour, the rate for a general manager, by 50 hours, the approximate number of hours per week that Loser worked at the business.

2. A.R.S. § 23–901(5)(i) provides:
 (i) The sole proprietor of a business subject to the provisions of this chapter may be deemed to be an employee entitled to the benefits provided by this chapter on written acceptance, by endorsement, at the discretion of the insurance carrier of an application for coverage by the sole proprietor. The basis for computing premium payments and compensation

benefits for the sole proprietor shall be an assumed average monthly wage of not less than six hundred dollars nor more than the maximum wage provided by § 23–1041 and is subject to the discretionary approval of the insurance carrier. Any compensation for permanent partial or permanent total disability payable to the sole proprietor shall be computed on the *lesser of the assumed monthly wage* agreed to by the insurance carrier on the acceptance of the application for coverage or the *actual average monthly wage* received by the sole proprietor at the time of the injury. (Emphasis added).

premiums for no coverage—a result directly contrary to the intent of the Act, which is to provide coverage to premium-paying sole proprietors.

We do not believe that the legislature intended to condition a sole proprietor's compensation on the success of the business. It is common knowledge, and even the Fund's accountant agreed, that often a business will not show a profit during the first year or few years of operation. It would be a great windfall to the carrier to be allowed to collect premiums during these years but deny benefits. Applying the "earned income" definition also leads to untoward results. For example, if both a sole proprietor and his employee are injured on the first day of business, the employee could receive permanent disability benefits but the sole proprietor could not. And what of the sole proprietor who earns a profit one year and not the next? Whether benefits are paid would depend on whether the insured is fortuitous enough to be injured during a profitable year. But the value of his services to the business does not change. The labor performed is the same, whether it results in profit or reduced losses.

We do not believe that the business's "earned income" is the ordinary meaning of the term "wage." Indeed, the term "wage" has no ordinary meaning in the context of a sole proprietor because sole proprietors do not earn wages. Unlike an employee who receives a fixed wage for services rendered, a sole proprietor may take a monthly "draw" from the business at his or her discretion in the amount the sole proprietor chooses. "Earned income" essentially refers to the profitability of the business and, judging from the testimony of the two accountants, applying different accounting methods can result in different figures. We must be consistent in our use of terms. Once the legislature defined a nonemployee as an employee, we would be comparing apples to oranges if we clung to the employee definition of wages. The statute contemplates employee coverage for sole proprietors. Why would one pay for coverage that does not exist?

■ Because A.R.S. § 23–901(5)(i) does not expressly provide a clear definition of a sole proprietor's "wage," we must define it in a way that avoids absurdity and fulfills the legislature's purpose. *See Senor T's Restaurant,* 131 Ariz. at 363, 641 P.2d at 851. We consider context, subject matter, historical background, effects, consequences, spirit, and purpose. *Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573, 575, 521 P.2d 1119, 1121 (1974). We construe the Workers' Compensation Act broadly to promote its underlying purpose. *Wiley v. Industrial Comm'n,* 174 Ariz. 94, 100, 847 P.2d 595, 601 (1993).

We do not believe that the legislature intended to measure a sole proprietor's compensation using average monthly "draw." This definition would punish the thrifty owner who chose to put all earnings back into the business. It might also promote creative accounting. A sole proprietor could simply draw out $1,650 every month, turn around, put it back into the business, and then be eligible for benefits. And because the amount of the draw is discretionary and may depend on profitability, it has no logical relationship to the amount of work actually performed.

■ Our goal in defining the "actual average monthly wage" of a sole proprietor is to determine a realistic pre-injury wage base that can serve as a standard of comparison with the worker's post-injury earning capacity. *Wiley,* 174 Ariz. at 100, 847 P.2d at 601. In most workers' compensation cases, the best method of determining lost earning capacity is to examine the worker's past wages. However, this will not always accurately reflect lost earning capacity, and is thus not the only acceptable measure. *See* A.R.S. § 23–1041(B) (allowing injured worker's wage to be established by examining wages of other workers in similar position). An employee may show that actual earnings are not a true measure of his or her earning capacity. *Miller v. Industrial Comm'n,* 113 Ariz. 52, 54, 546 P.2d 19, 21 (1976).

In Loser's case, we do not have past wages with which to determine his lost earning capacity. But it is not zero. The best way to measure the lost earning capacity of a sole proprietor is by the market value of the

services performed. It was uncontroverted that Loser would have had to hire a general manager at $8.00 an hour to replace him. He did not obtain insurance on his business investment; he insured himself as an "employee," thus covering his contribution to the business in the event he were to suffer an industrial accident. Even the Fund recognizes that the focus of the "average monthly wage" inquiry is the economic gain to the worker. If Loser had to hire someone to do his job, his business would have lost an additional $1,733.32 per month. Loser's contribution had this value.

 We hold that the "actual average monthly wage" of a sole proprietor is measured by the market value of services rendered. Under § 23–901(5)(i) the "assumed monthly wage" is a cap on a sole proprietor's benefits. It is the basis for the sole proprietor's premium. The carrier is thus protected.

## CONCLUSION

For these reasons we affirm the administrative law judge's award of $1,650 per month—the lesser of the assumed monthly wage ($1,650) and the "actual average monthly wage" ($1,733.32). We vacate the opinion of the court of appeals.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.