**MANSION HILLS CONDOMINIUM ASSOCIATION, Appellant,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Respondent.**

**No. ED 79521.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 4, 2001.

Dean R. Gallego, Wilke & Wilke, P.C., St. Louis, MO, for appellant.

Robert J. Wulff, Amelung, Wulff & Willenbrock, P.C., St. Louis, MO, for respondent.

RICHARD B. TEITELMAN, Judge.

Mansion Hills Condominium Association ("Mansion Hills") appeals the trial court's judgment entered in favor of its insurer, American Family Mutual Insurance Company ("American Family"), on its claim for coverage under the employee dishonesty provisions of its business and property insurance policy. The issue on appeal is whether the office manager who embezzled funds from Mansion Hills was the employee of an "employment contractor" within the meaning of the insurance policy, thereby allowing coverage for the financial losses Mansion Hills incurred from her acts of theft and dishonesty. We hold that the term "employment contractor" as used in the policy is ambiguous and therefore must be construed in favor of the insured. The judgment is reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

Mansion Hills applied for and purchased a policy of business and property insurance from American Family. The policy was in effect during all relevant time periods, and all premiums were paid. Included in the policy, for an additional premium, was a separate endorsement which provided for Employee Dishonesty coverage.

KEM Construction Company ("KEM") was created for the purpose of developing and then managing the Mansion Hills condominium complex. Mansion Hills hired KEM to manage its property and staff the condominium office; it paid KEM an annual fee to provide an on-site office manager.

KEM, in turn, paid Pat Ducharme to serve as the Mansion Hills office manager. Ms. Ducharme received her W–2 form directly from KEM; Mansion Hills did not have any direct employees of its own. Ms. Ducharme's duties as the office manager included, among others, collecting monthly condominium fees from residents, paying expenses, and hiring independent contractors to perform maintenance work as needed. In carrying out her various duties as its office manager, she was subject to the direction and control of Mansion Hills. In her position, she had the authority to write checks from the Mansion Hills checking account, as well as from KEM's checking account.

Over a period of time while serving as Mansion Hills' office manager, Ms. Ducharme engaged in a pattern and practice of embezzlement. She misappropriated funds from the Mansion Hills checking account totaling $43,493.47.[1] As a result of the losses stemming from these acts of theft, Mansion Hills submitted a claim to American Family under the Employee Dishonesty endorsement of the insurance policy. The endorsement provided coverage for acts of employee dishonesty, and defined "employee" as either (a) any direct employee of the insured, *or* (b) any person employed by an "employment contractor" while the person was performing services for the insured under the insured's direction and control. American Family refused to pay the claim, contending that Ms. Ducharme was not an "employee" as defined in the endorsement. Both parties agreed that Ms. Ducharme was not a direct employee of Mansion Hills, and thus the issue is whether or not she was employed by an "employment contractor" within the meaning of the endorsement.

Mansion Hills filed a breach of contract action against American Family in circuit court, seeking to compel payment of the claim. The case was submitted to the court primarily on stipulated facts.[2] The trial court held that KEM was not an "employment contractor" within the meaning of the Employee Dishonesty endorsement, and hence that American Family did not breach the insurance contract with Mansion Hills by denying its claim. This appeal follows.

## DISCUSSION

The sole issue presented on appeal is whether the trial court erred in concluding that Ms. Ducharme, the office manager, was not the employee of an "employment contractor" within the meaning of the endorsement. American Family argues that the term is unambiguous and that its plain meaning refers to temporary employment services or agencies. Mansion Hills argues that "employment contractor" could reasonably have a broader meaning encompassing any third party who provides employment staffing to another for a fee, and that at best the term is ambiguous and therefore should be construed in favor of the insured.

 The interpretation and meaning of an insurance policy is a question of law. *Buck v. American Family Mutual Ins.*

---

1. The record shows that Ms. Ducharme also *embezzled approximately $145,000 from KEM*. She eventually was investigated by law enforcement authorities, indicted in federal district court on mail fraud charges, pled guilty to one count and was sentenced to a term of imprisonment.

2. The case was also submitted upon the parties' Joint Exhibits 1 through 9, including some extensive deposition transcripts, as well as several separate exhibits that were filed by each party. All exhibits have been filed with this Court pursuant to Rule 81.16. In their briefs on appeal, the parties have not suggested that there is any disputed issue of fact in this case.

*Co.,* 921 S.W.2d 96, 98 (Mo.App. E.D.1996). In a case tried solely on stipulated facts, the only issue on appeal is whether the court drew the proper legal conclusions from those facts. *State Farm Mutual Automobile Insurance Co. v. Sommers,* 954 S.W.2d 18, 19 (Mo.App. E.D.1997). This case, however, was submitted to the court based in part on stipulated facts but also in part on exhibits offered by the parties, not all of which were joint exhibits. Thus, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of evidence, or unless it erroneously declares or erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

We begin by examining the critical policy language. The definitions portion of the insurance policy's Employee Dishonesty endorsement states, in relevant part:

1. **Employee** means:

 a. Any natural person:

 (1) while in your services (and for 30 days after termination of services); and

 (2) whom you compensate directly by salary, wages or commissions; and

 (3) whom you have the right to direct and control while performing services while performing services for you.

 b. Any natural person employed by an employment contractor, while that person:

(1) is subject to your direction and control; and

(2) is performing services for you;

\* \* \* \*

**Employee** does not include any agent, broker, factor, commission merchant, co-signee, independent contractor[3] or any representative of the same or similar character.

 When the language of an insurance contract is unambiguous then rules of construction are inapplicable and, absent a public policy exception to the contrary, the contract must be enforced as written. *Krombach v. Mayflower Ins. Co., Ltd.,* 827 S.W.2d 208, 210 (Mo. banc 1992). Courts may not create an ambiguity in order to distort the language of an unambiguous insurance policy. *Id.* But where the language of an insurance policy is ambiguous, it must be construed against the insurer. *Id.; Martin v. U.S. Fidelity and Guaranty Company,* 996 S.W.2d 506, 508 (Mo. banc 1999). The rule of *"contra proferentum "* is applied more rigorously in insurance contracts than in other contracts. *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri,* 992 S.W.2d 308, 317 (Mo.App. E.D.1999). Whether an insurance policy is ambiguous is a question of law. *Martin,* 996 S.W.2d at 508. An ambiguity exists "when there is duplicity, indistinctness, or uncertainty in the meaning of the language," and language will be deemed ambiguous "if it is reasonably open to different constructions." *Id.; Gulf Ins. Co. v. Noble Broadcast,* 936 S.W.2d

3. American Family never argued to the trial court or sought to prove that Ms. Ducharme was not an employee on grounds that KEM was an "independent contractor," as it had an obligation to do if it wished to raise a defense based upon such exclusionary policy language. See *American Family Mutual Ins. Co. v. Bramlett ex rel. Bramlett,* 31 S.W.3d 1, 4 (Mo.App. W.D.2000). In any case, it is clear that neither KEM nor Ms. Ducharme would qualify as an "independent contractor" here, since the record indicates Mansion Hills controlled her daily work activities. See *Carter v. Wright,* 949 S.W.2d 157, 160 (Mo.App. W.D. 1997).

810, 813 (Mo. banc 1997); *Krombach*, 827 S.W.2d at 210.

■■■ If a term is specifically defined in an insurance policy, courts will normally look to that definition and nowhere else to determine its meaning. *Hobbs v. Farm Bureau Town & Country Ins. Co. of Missouri*, 965 S.W.2d 194, 197 (Mo.App. E.D. 1998). However, in order for the contract definition to necessarily control, the definition itself must be reasonably clear and unambiguous. *Id.* Otherwise, an appellate court is free to give a reasonable construction to the term, applying general contract principles and resolving doubts in favor of the insured. *Id.* When interpreting language of an insurance policy that is not defined, courts must give a term its ordinary meaning unless it plainly appears that a technical meaning was intended. *Martin*, 996 S.W.2d at 508. The ordinary meaning of a term is that which an average layperson would reasonably understand. *Id.* To determine the ordinary meaning of a term, courts will consult standard English language dictionaries. *Id.*

Here, the term "employment contractor" as used in the insurance policy's Employee Dishonesty endorsement is not defined anywhere in the policy, and is not defined in any standard English dictionaries. Reference to legal authorities is likewise of little assistance. The term is not defined in Black's Law Dictionary, and does not appear in Missouri case law. There is no reported case from any jurisdiction precisely on point. Our review of the small number of cases from other jurisdictions in which the term "employment contractor" has appeared indicates that, although the term is occasionally used by courts to refer to a temporary employment service or agency, there is no clear or settled definition limiting the term to only that meaning. See, e.g., *Homemakers, Inc. v. Chica-*

*go Home for the Friendless*, 313 F.Supp. 1087, (N.D.Ill.1970) (court referred to Homemakers as a "business of supplying services as an employment contractor for domestic and medically related services").

Nevertheless, American Family insists that "employment contractor" as used in the endorsement clearly and unambiguously refers only to a temporary employment agency, because that is the term's "ordinary meaning." Acknowledging that there is no accepted definition of the term to be found in either standard English dictionaries or legal authorities, American Family cites us to the Southwestern Bell Yellow Pages for the Greater St. Louis Area ("Yellow Pages") in support of its position. Specifically, it points out its exhibit consisting of several pages therein, in which various entities advertise under the heading of "Employment Contractors Temporary Help." The businesses listed include some of the more well known agencies, such as AccounTemps, Kelly Services, Manpower, Olsten Staffing Services, as well as numerous lesser known such businesses. This part of the Yellow Pages clearly shows, American Family contends, both (1) that the term "employment contractor" has an accepted ordinary meaning that "the average Joe Citizen would believe the term to mean," and (2) that the meaning is limited only to "an employment agency which provides 'temporaries' to a particular business on a 'fill-in' basis."

■■■ We disagree. The telephone Yellow Pages are an advertising medium, not a reference guide for discerning the meaning of words and phrases. Our research has revealed no case from any jurisdiction in which a court has ever used the Yellow Pages as an aid or authority in construing the meaning of language. This is manifestly a case in which it is apparent that the disputed term, "employment contractor," simply does not have any readily

discernible ordinary meaning.[4] If it did, then of course there would be no ambiguity, due to the general rule that when construing insurance contracts ordinary words should be given their ordinary meaning unless an alternative meaning is plainly intended. *Martin v. U.S. Fidelity and Guaranty Co.*, 996 S.W.2d at 508. Obviously, however, that rule cannot apply when the term in question has no ordinary meaning.

Additionally, we note that while American Family's proffered construction of the term "employment contractor" is a reasonable one, there are several factors which also support the reasonableness of Mansion Hills' alternative construction.

■ First, reference to the dictionary does lend at least some support to Mansion Hills' position. When a term consists of more than one word (such as "executive officer" or "employment contractor") and an applicable definition for the term itself cannot be found in the dictionary, it still can be somewhat helpful to look to the dictionary's definitions of the term's *constituent parts* as an aid to understanding. See *Martin v. U.S. Fidelity and Guaranty Co.*, 996 S.W.2d at 509. Here, reference to the dictionary indicates that "employment" means: "1: USE, PURPOSE 2 a: activity in which one engages or is employed. b an instance of such activity. 3 the act of employing: the state of being employed. syn see WORK." Webster's 9th New Collegiate Dictionary, 1991. And "contractor" is defined as: "1: One that

contracts or is party to a contract: as a: one that contracts to perform work or provide supplies on a large scale. b: one that contracts to erect buildings." *Id.* Given these constituent part meanings, and especially given that the endorsement's definition of "employee" included more than just direct employees of the insured, a reasonable policyholder might have assumed that "employment contractor" meant any third party—such as KEM— who contracted to provide workers for another.

Second, we note that there is no substantive difference between Mansion Hills paying a recognized "temporary" services agency, such as Kelly or Manpower or Olsten, who in turn then pays a worker to serve as Mansion Hills' office manager, and paying KEM to staff the position and do the very same thing. In each case, *the substance of the transaction is identical:* Mansion Hills pays a third party to hire someone to staff its office; that third party then places one of its employees in the office to perform work under the direction of Mansion Hills. In this regard, a reasonable insured might assume that KEM was no less an "employment contractor" merely because it was not listed as such in the Yellow Pages.

Third, and especially in light of the previous two considerations, we find it significant that American Family chose not to either (a) clearly define "employment contractor" or (b) use a more commonly understood term such as "temporary service

---

4. Courts have recognized that there are instances, such as this one, in which a term does not have any plain "ordinary meaning" as applied in a particular context. See, e.g., *Phillips v. Schwartz*, 607 S.W.2d 203, 207 (Mo.App. E.D.1980) (the term "trailer," depending upon the context, lacks a readily discernible ordinary meaning); *Litton Indus. Automation Systems, Inc. v. Nationwide Power Corp.*, 106 F.3d 366, 372 (11th Cir.1997)

(term "judgment lien" has no ordinary meaning); *McKeown v. State Architects Licensure Bd.*, 705 A.2d 524, 527 (Pa.Cmwlth.1998) (term "shop drawings" has no ordinary meaning outside specialized fields of architecture, engineering and construction); *Mail Boxes v. Industrial Commission of Arizona*, 181 Ariz. 119, 888 P.2d 777, 780 (1995) (term "wage" has no ordinary meaning as applied to sole proprietor).

agency" or "employment agency." Had American Family wished to limit employee dishonesty coverage, with respect to the insured's "non-direct" employees, to only those individuals who were retained through a "temporary" agency such as AccounTemps or Kelly, it easily could have used plain language to clearly say so. It did not do that. Instead, it chose to use an inherently imprecise and undefined term with a potentially broader meaning.

■■■ For the foregoing reasons, we conclude that the term "employment contractor," as used in the Employee Dishonesty endorsement, is ambiguous because it is reasonably susceptible to more than one interpretation. If an insurance policy is reasonably open to different constructions, we will adopt the one most favorable to the insured. *Hobbs v. Farm Bureau Town & Country Ins. Co.*, 965 S.W.2d at 198. Having failed to make clear what was meant by the term "employment contractor," American Family "must bear the burden of any resulting confusion." *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d at 211.

The judgment is reversed, and the cause is remanded to the trial court for further proceedings and to enter judgment in favor of Appellant consistent with this opinion.

PAUL J. SIMON, J., and CLIFFORD H. AHRENS, J., concur.