IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

APR 28 2006

COURT OF APPEALS
DIVISION TWO

WILLIAM WAYNE ROUBOS,                  )
DERRICK STEPHEN DeNOMME, and           )
KTTL ENTERPRISES-PACIFIC BEACH         )
CLUB, INC., an Arizona corporation, dba )
DV8 Nightclub,                         )
                                       )         2 CA-SA 2005-0080
                                       )         DEPARTMENT B
                       Petitioners,    )
                                       )         O P I N I O N
          v.                           )
                                       )
HON. LESLIE MILLER, Judge of the       )
Superior Court of the State of Arizona, in )
and for the County of Pima,            )
                                       )
                       Respondent,     )
                                       )
          and                          )
                                       )
CITY OF TUCSON, a municipal            )
corporation,                           )
                                       )
                Real Party in Interest. )
                                       )


SPECIAL ACTION PROCEEDING

Pima County Cause No. C20052396

JURISDICTION ACCEPTED; RELIEF GRANTED

Munger Chadwick, P.L.C.
  By John F. Munger and Laura P. Chiasson                    Tucson
                                                Attorneys for Petitioners

Michael G. Rankin, Tucson City Attorney
  By Laura Brynwood and William F. Mills

Tucson
Attorneys for Real Party in Interest

E C K E R S T R O M, Presiding Judge.

¶1        Petitioners William Roubos, Derrick DeNomme, and KTTL Enterprises-Pacific Beach Club, Inc., doing business as DV8 Nightclub, successfully defended actions filed against them by the City of Tucson, which alleged that they had violated an ordinance prohibiting loud or unruly gatherings on their property.  They now seek special action relief from the respondent judge's ruling, which affirmed the city court's denial of their request for attorney fees under A.R.S. § 12-348.  We conclude they were entitled to an award of attorney fees and vacate the ruling.

## Special Action Jurisdiction

¶2        As petitioners correctly assert, they have no "equally plain, speedy, and adequate remedy by appeal." Ariz. R. P. Spec. Actions 1(a), 17B A.R.S.  Indeed, they exhausted their remedies by direct appeal when they appealed the city magistrate's denial of attorney fees to the superior court.  *See* A.R.S. §§ 22-425(B) (parties may appeal municipal court judgments to superior court); 12-120.21(A)(1) (court of appeals has appellate jurisdiction only of actions "originating in or permitted by law to be appealed from the superior court"); 12-2101(B) (parties may appeal from "final judgment entered in an action . . . commenced in a superior court, or brought into a superior court from any other

2

court"); *Sanders v. Moore*, 117 Ariz. 527, 528, 573 P.2d 927, 928 (App. 1977) (§ 12-2101(B) does not apply to cases appealed from justice court; it applies only to "cases transferred or brought into superior court by some process other than appeal"); *State v. Fagerberg*, 17 Ariz. App. 63, 64, 495 P.2d 503, 504 (1972) (same).

¶3        Moreover, petitioners raise both a question of law and a question of first impression. *See Piner v. Superior Court*, 192 Ariz. 182, ¶ 10, 962 P.2d 909, 912 (1998) (special action jurisdiction proper, in part, because "[t]he facts are not contested, and the legal issue can properly be decided on the present record"); *ChartOne, Inc. v. Bernini*, 207 Ariz. 162, ¶ 8, 83 P.3d 1103, 1107 (App. 2004) ("[Q]uestions of law . . . are particularly appropriate for special action review."). Accordingly, we accept jurisdiction of the special action. And, because we conclude the respondent judge abused her discretion by erroneously determining this legal issue of first impression, *see* Rule 3(c), Ariz. R. P. Spec. Actions, we grant relief. *See Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, ¶ 10, 63 P.3d 282, 284-85 (2003); *State v. Chapple*, 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983).

**Factual and Procedural Background**

¶4        The City of Tucson cited petitioners twice in September 2004 for having loud or unruly gatherings at the DV8 Nightclub, in violation of Tucson City Code (TCC) § 16-32. After a combined hearing in Tucson City Court, petitioners were found not responsible for the infractions. But the magistrate denied their request for attorney fees pursuant to § 12-

3

348, finding the cases were not civil actions and therefore not covered by that statute. Petitioners appealed the ruling to superior court. The respondent judge affirmed, concluding *inter alia* that, because the penalty for violating the ordinance in question is a fine, the proceedings by the City to enforce that ordinance were criminal rather than civil in nature.

**Discussion**

¶5        We review *de novo* a trial court's interpretation of a statute. *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, ¶ 8, 105 P.3d 1163, 1166 (2005). "The primary rule of statutory construction is to find and give effect to legislative intent." *Mail Boxes, Etc., U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). "We focus first on the statutory wording and, if it is ambiguous or inconclusive, we consider the statute's 'context, subject matter, historical background, effects, consequences, spirit, and purpose.'" *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 17, 965 P.2d 47, 53 (App. 1998), *quoting Mail Boxes, Etc.*, 181 Ariz. at 122, 888 P.2d at 780.

¶6        The applicable portion of the attorney fee provision, § 12-348(A), reads as follows:

> In addition to any costs which are awarded as prescribed by statute, a court shall award fees and other expenses to any party other than this state or a city, town or county which prevails by an adjudication on the merits in any of the following:
>
> 1.  A civil action brought by . . . a city . . . against the party.

That language requires a court to award attorney fees to a nongovernmental party who successfully defends against a civil action filed by a city.

¶7 However, § 12-348(H) lists a number of exceptions to that mandate. The exception at issue here, and the one on which the respondent judge based her ruling, states that § 12-348 does not "[a]pply . . . to criminal proceedings brought by a city, town or county on ordinances which contain a criminal penalty or fine for violations of those ordinances." § 12-348(H)(8). The city ordinance in question, § 16-32(e) of the TCC, provides: "An unruly gathering is unlawful and constitutes a civil infraction."

¶8 Thus, in order to decide whether § 12-348 entitles petitioners to recover their attorney fees from the City, we must first determine whether the legislature intended that proceedings brought by a city to enforce a "civil infraction," such as that described in § 16-32(e), be characterized as civil actions pursuant to § 12-348(A)(1) or criminal actions pursuant to § 12-348(H)(8). For the following reasons, we conclude that the legislature intended that such proceedings be considered civil actions.

¶9 Most importantly, the legislature has, since the origins of our state, expressly used the term "civil action" to describe the very type of civil enforcement proceedings at issue here. Current A.R.S. § 22-406, which uses nearly identical language in its relevant parts to precursor provisions dating to at least 1909, states: "The city or town may maintain a *civil action* in the municipal court for the recovery of a penalty or forfeiture provided for

5

the violation of an ordinance. The action shall be brought and conducted as *civil actions* in justice of the peace courts." (Emphases added.)

¶10 When confronted with this language during oral argument, the City emphasized that another, more specific statute, A.R.S. § 9-500.21, articulates the procedure by which ordinance violations may be pursued as "civil offenses" by a municipality. It appears to contend that the offenses here are "civil offenses" under § 9-500.21, rather than "civil actions" under § 22-406. Section 9-500.21 was enacted in 2001 and specifically stated that it did "not require changes to procedures in effect before [its] effective date." 2001 Ariz. Sess. Laws, ch. 257, § 2. Thus, the statute did not independently enable cities to bring a specific species of "civil offense" actions to enforce ordinances, but rather imposed procedural requirements on civil actions already permitted. Section 22-406 is the pre-existing enabling legislation allowing those civil actions. Therefore, properly interpreted, § 9-500.21, imposing inherently civil procedures on actions to enforce ordinance violations, actually provides additional evidence that the legislature considered such actions "civil actions."

¶11 The City also suggested that the language in § 22-406, enabling an "action . . . for the recovery of a penalty . . . for the violation of an ordinance," merely authorizes a city to initiate a supplemental proceeding to secure collection of a penalty already imposed. But the City overlooks that an "action . . . for the recovery of a penalty" is a term of art referring to an action to enforce an ordinance in the first instance. 9A Eugene McQuillin,

6

*The Law of Municipal Corporations* § 27.05, at 292 (3d ed. rev. 1996) ("The common method of compelling obedience to ordinances is by the imposition of penalties for their violation. . . . In this country there are two modes ordinarily recognized for enforcing penal ordinances. One is an action to recover the penalty, and the other is the . . . familiar summary proceeding on information or complaint."). Thus, when the legislature promulgated § 22-406 and its precursor provisions, it intended to authorize a municipality to use civil as well as summary criminal proceedings to enforce its ordinances—and was enabling precisely the type of enforcement proceeding, pursued through a civil process as set forth in § 9-500.21, that we address here. And we find no language in the legislature's subsequent provisions, including § 9-500.21, that modifies or withdraws the legislature's foundational characterization of such a proceeding as a "civil action."

¶12 The City's own charter draws a clear distinction between criminal proceedings and civil actions in the enforcement of its ordinances . Chapter XXV, § 5 of the Tucson City Charter provides:

> The violation of any provisions of this Charter, or of any ordinance of the city, shall be deemed a misdemeanor, and may be prosecuted by the authorities of the city in the name of the State of Arizona, or may be redressed by civil action, at the option of the mayor and council.

And, there can be little doubt that the mayor and council have exercised their option of redressing violations of the ordinance here by "civil action." *Id.* Not only have the mayor and council in the TCC expressly described a violation of the ordinance as a "civil

7

infraction" rather than as a misdemeanor, TCC § 16-32, but they have set forth a civil rather than criminal process for determining when a party has committed such an infraction.

¶13     Under the TCC, the civil infraction process is governed by the Tucson Local Rules of Practice and Procedure in City Court Civil Proceedings. TCC § 8-8. Under those rules, a proceeding is commenced either by a citation or a civil complaint served by any method authorized by the Arizona Rules of Civil Procedure. Tucson Loc. R. P. City Ct. Civ. Proceedings 3(a), (b), 17B A.R.S.; *see* TCC § 16-50; *see also* § 9-500.21 (adopting procedural requirements for ordinance violations classified as civil offenses). The rules of evidence do not apply, and the City must prove the person is responsible only by a preponderance of the evidence. *See* Tucson Loc. R. P. City Ct. Civ. Proceedings 15; § 9-500.21(3) (requiring procedures for "hearing, record on appeal, default by a defendant and rules of evidence that generally comply with those for civil traffic offenses"); *cf.* A.R.S. § 28-1596(D) (state is required to prove civil traffic offenses by preponderance of evidence). If a person is found responsible for violating a city ordinance, the court may impose a "civil penalty." § 9-500.21(4). And an appeal from a finding that a person is responsible for violating an ordinance "shall be governed by the Superior Court Rules of Appellate Procedure-Civil." Tucson Loc. R. P. City Ct. Civ. Proceedings 23(a); *see* TCC § 16-51 ("Appeals from civil infraction proceedings shall be in accordance with the Superior Court Rules of Appellate Procedure-Civil. Appeals from criminal proceedings shall be in accordance with the Superior Court Rules of Appellate Procedure-Criminal.").

8

¶14    In short, the legislature has enabled municipalities to enforce their ordinances through criminal or civil proceedings and has specifically characterized civil proceedings used to enforce such ordinances as "civil actions." § 22-406. As demonstrated above, the City of Tucson has unambiguously exercised its option to enforce a violation of the specific ordinance here through civil proceedings. Accordingly, the action brought by the City against petitioners was a "civil action," as the legislature has defined that term. *Id.*

¶15    In ruling that § 12-348 did not apply to the civil infraction proceeding against petitioners, the respondent judge determined that the Tucson City Court has no jurisdiction over civil matters. In so doing, she relied on language in A.R.S. § 22-402 and *Wissner v. State*, 21 Ariz. App. 432, 520 P.2d 526 (1974). We find neither the statute nor the case compels that conclusion.

¶16    Section 22-402 establishes municipal courts in each incorporated city or town and provides, in relevant part, as follows:

> **B.**    Every court established pursuant to subsection A, and every court established in a city incorporated under the provisions of title 9, chapter 2, article 5 or incorporated under the provisions of a special act or charter, has jurisdiction of all cases arising under the ordinances of the city or town, and has jurisdiction[,] concurrently with justices of the peace of precincts in which the city or town is located, of violations of laws of the state committed within the limits of the city or town.

The final clause is irrelevant to this case because the underlying action did not involve a violation of state law. And the first clause simply provides that municipal courts have jurisdiction over cases arising under the municipality's ordinances. Nothing in the statutory

9

language expressly or implicitly precludes an exercise of civil jurisdiction to resolve alleged violations of those ordinances.

¶17         In *Wissner*, this court held that the Tucson City Court lacked jurisdiction to determine whether a defendant being prosecuted for shoplifting was competent to stand trial, stating, as the respondent judge quoted in her ruling: "The jurisdiction of City Court, as prescribed by law, is limited to cases arising under the city ordinances and violations of state laws committed within city limits. A.R.S. § 22-402. Thus, we see that it has no jurisdiction of civil matters." 21 Ariz. App. at 434, 520 P.2d at 528.

¶18         For two reasons, we find that statement overbroad when applied to the circumstances here. First, at the time we issued *Wissner*, when a court found a defendant incompetent to stand trial, one of its options was to order the defendant civilly committed. *See* former Ariz. R. Crim. P. 11.5(b)(2)(i) (1973);[1] *Wissner*, 21 Ariz. App. at 433, 520 P.2d at 527. Under the civil commitment statutes both as they read at that time and now, only a superior court has jurisdiction to order a person committed for involuntary mental health treatment. *See* former A.R.S. § 36-514, 1958 Ariz. Sess. Laws, ch. 84, § 1; A.R.S. §§ 36-501(4), 36-540. Thus, although we broadly stated in *Wissner* that a municipal court has "no jurisdiction of civil matters," our more specific comment there more accurately stated our holding—that "[a] proceeding to determine whether a defendant possesses sufficient mental

---

[1]Under current Rule 11.5(b)(2)(i), Ariz. R. Crim. P., 16A A.R.S., a superior court may remand a defendant to the Department of Health Services for it to initiate civil commitment proceedings. *See* A.R.S. § 36-533.

capacity to be tried is a special proceeding of a civil nature" that municipal courts had not been authorized to conduct. 21 Ariz. App. at 434, 520 P.2d at 528.

¶19        Second, as seen above, the respondent judge's ruling and a broad interpretation of the dictum in *Wissner* contradicts the provisions of § 22-406, which unambiguously authorize municipalities to bring civil actions to enforce an ordinance.[2] Moreover, as enabled by those provisions, the Tucson City Charter expressly granted Tucson City Court civil jurisdiction to enforce its ordinances. The Tucson City Court was created by chapter XII, § 1 of the City Charter. Section 2 of chapter XII describes the court's jurisdiction as follows:

> It shall have and exercise exclusive original jurisdiction of all proceedings of a criminal nature for the violation of any ordinance of said city, *and of every action of a civil nature* for the enforcement of a penalty, or the recovery of a penalty or forfeiture imposed by any ordinance of said city for violation thereof . . . .

(Emphasis added.) And the TCC provides that "[t]he Local Rules of Practice and Procedure in City Court Civil Proceedings . . . apply to all . . . actions for civil violations or civil infractions of this Code." § 8-8. We are therefore unable to agree with the respondent judge's ruling that the proceedings to enforce the ordinance could not be civil actions because Tucson City Court lacks jurisdiction to hear civil matters.

---

[2]Neither petitioners nor the City cited the provisions of A.R.S. § 22-406 to the respondent judge in either pleadings or argument.

11

¶20 Notwithstanding our conclusion that the enforcement proceeding here was a civil action, petitioners would not be entitled to their attorney fees if the action fell within one of the numerous exceptions in § 12-348(H). The City maintains, and the respondent judge concluded, that the proceeding fell within the exception for "proceedings brought by a city . . . pursuant to traffic ordinances or to criminal proceedings brought by a city . . . which contain a criminal penalty or fine for violations of those ordinances." § 12-348(H)(8). Again, we must disagree.

¶21 At the outset, our previous conclusion that the proceeding in question is a "civil action" precludes any simultaneous characterization of that action as a "criminal proceeding." As discussed above, the state has enabled the City to enforce its ordinances using civil or criminal proceedings and the City, while itself setting forth a clear distinction between criminal proceedings and civil actions, expressly chose to pursue what it calls a "civil" infraction here using civil rules of procedure subject to civil standards of proof.

¶22 Citing our supreme court's opinion in *Frazier v. Terrill*, 65 Ariz. 131, 136, 175 P.2d 438, 441 (1946), the respondent judge concluded, in essence, that the enforcement action must have been a criminal proceeding because the sanction for violating the ordinance is a fine, and a fine is generally a criminal sanction. *Id.* (""Penalty" and "fine" are not the same in law. A penalty is always recoverable in a civil action. A fine never is.""), *quoting* 31A *Words and Phrases* 435 (perm. ed. 1957). But the *Frazier* court was not asked to characterize the fundamental nature of the proceeding before it. Rather, it addressed the

12

traditional legal distinction between a fine and a penalty in determining whether a justice court possessed jurisdiction to preside over a criminal misdemeanor case in which a combination of fines and penalties might exceed the jurisdictional limit. *Id.* at 133, 175 P.2d at 439-40.

¶23 And to the extent *Frazier* suggests that the appropriate terminology for a financial sanction in a civil enforcement action should be "penalty" rather than "fine," we decline to conclude that the enforcement action here was a criminal proceeding merely because the drafters of the Tucson City Code arguably used the wrong terminology. Indeed, § 9-500.21(4), the legislative provision the City trumpets as the procedural framework for the civil enforcement action, refers to the financial sanction as a "civil penalty" rather than a fine. Thus, the legislature itself has labeled the financial sanctions for the violation of ordinances as "civil penalties." *Id.* We therefore doubt that the legislature would have intended to recharacterize the action here as a criminal proceeding merely because a given municipality might have chosen different terminology for the sanction imposed.

¶24 In the same vein, the City contends that the civil infraction proceeding was a criminal proceeding because "the maximum fine for both a civil infraction and for a criminal misdemeanor" is the same. In comparing the maximum fine in the general penalty section to the maximum fine for a class one misdemeanor, the City overlooks the lesser maximum fines adopted for class two and three misdemeanors. *See* TCC § 8-6.1(a)(1); A.R.S. § 13-802(A)-(C). The City also overlooks A.R.S. § 13-707(A)(1) through (3), which permit a

13

person convicted of a misdemeanor to be sentenced to a term in jail ranging from thirty days for a class three misdemeanor to six months for a class one misdemeanor. But, as noted above, a person found responsible for a civil infraction is not subject to incarceration of any kind, even under the general penalty section of the code. *See* TCC §§ 16-32(g), 8-6.1(a). Thus, the City's argument simply compares apples to oranges.

¶25　　　　The respondent judge also noted that a person's failure to abate a violation of a city ordinance may subject the person to an additional "fine, incarceration and/or a period of probation," consequences she noted are "all penalties for criminal violations." Although such consequences are penalties for criminal violations, they may only be imposed if the person has been convicted of criminal charges filed because of the person's "failure to obey an order to abate a violation," not for the person's violation of the ordinance itself, the only factual scenario before us. TCC § 8-6.1(a)(3) (city attorney may file criminal charges for failure to abate ordinance violation); *see* TCC § 16-67 (person who fails to obey order abating any violation of chapter 16 "is guilty of a misdemeanor"). For the above reasons, we conclude the respondent judge erred when she construed the civil enforcement action here as a criminal proceeding.

¶26　　　　The City suggests that, even if we do not construe the enforcement action as a criminal proceeding itself, the legislature nonetheless intended to exempt those proceedings from § 12-348 because those proceedings are so similar to other types of actions expressly exempted. Specifically, the City observes that the legislature has required

14

municipalities to employ courtroom procedures "that generally comply with those for civil traffic offenses," when civilly enforcing municipal ordinances, § 9-500.21(3), and it has exempted actions to enforce civil traffic violations from the attorney fee provisions in § 12-348(A). § 12-348(H)(8).

¶27 But, in *Estate of Walton*, 164 Ariz. 498, 794 P.2d 131 (1990), our supreme court construed § 12-348 "to mandate awards to all parties prevailing against the state, absent an affirmative statutory prohibition," and quoted its statement in a previous case: "'So long as the litigation falls within one of the categories of subsection A and is not excluded under subsection [H] an award of fees is proper.'" *Walton*, 164 Ariz. at 501, 794 P.2d at 134, *quoting Cortaro Water Users' Ass'n v. Steiner*, 148 Ariz. 314, 317, 714 P.2d 807, 810 (1986). The legislature has not set forth any "affirmative statutory prohibition" on an award of attorney fees for the civil enforcement of nontraffic municipal ordinances. *Id.*

¶28 Moreover, the legislature has not hesitated to create numerous exceptions to the attorney fee provisions in § 12-348(A) and has done so with great specificity. *See* § 12-348(H)(1)-(8) (listing eight exception provisions, each of which itemizes several specific exceptions). When, as here, the legislature has demonstrated an intent to itemize exceptions to § 12-348(A) in specific rather than general terms, we may not assume a general legislative intent to exempt civil enforcement actions in the absence of a specific legislative provision so stating. Thus, we cannot assume the legislature intended to exempt civil enforcement of municipal ordinances from the attorney fee provision of § 12-348(A) simply because it chose

15

to do so in a distinct but procedurally analogous realm of civil traffic enforcement actions.[3] *See State v. Roscoe*, 185 Ariz. 68, 71, 912 P.2d 1297, 1300 (1996) ("'A well established rule of statutory construction provides that the expression of one or more items of a class indicates an intent to exclude all items of the same class which are not expressed.'"), *quoting Pima County v. Heinfeld*, 134 Ariz. 133, 134, 654 P.2d 281, 282 (1982).

¶29       Lastly, the City emphasizes that an award of attorney fees in this case would not serve the underlying purposes of § 12-348, a statute it contends was designed merely "to encourage individuals aggrieved by governmental action to assert their rights" but not to undermine the government's ability to function. The City maintains that imposing such potential costs on a municipality for an unsuccessful enforcement action would cause "a severe chilling effect upon that municipality's enforcement efforts against those who violate city ordinances." And the City warns that such an application of § 12-348 would therefore wreak "havoc . . . upon city code enforcement of other civil infractions such as building and fire safety violations or public nuisances, . . . potentially gutting the ability of cities and towns to provide and enforce regulations for the public welfare."

¶30       We are cognizant of such concerns and do not trivialize them. But, although reasonable minds might dispute whether attorney fees should be awarded to a prevailing

---

[3]In a parallel argument, the City has also maintained that the legislature's exemption of proceedings brought by cities under titles 13 and 28 of Arizona Revised Statutes suggests a general legislative intent to exempt civil enforcement actions as well. But the civil infraction action here was not a proceeding brought under title 13 or 28, and we therefore reject this argument for the same reason stated in ¶ 27.

16

private party under the circumstances here, it is the task of the legislature to make such public policy judgments. Presumably, any measure that exposes a governmental entity to payment of opposing parties' attorney fees makes the relevant governmental action more costly. But, in promulgating § 12-348, the legislature intended to ameliorate "the disparity between the resources and expertise of . . . individuals and their government" and reduce the "economic deterrents to contesting governmental action." 1981 Ariz. Sess. Laws, ch. 208, § 1. It is the legislature's province, not ours, to determine whether its stated remedial goals are outweighed by the City's public policy concerns in this context. We note that the legislature has not hesitated to adopt exceptions to § 12-348 in order to strike what is, in its view, an appropriate balance. Moreover, the City may proceed by criminal actions if it chooses, albeit subject to an elevated burden of proof, thereby avoiding the provisions of § 12-348. *See* § 12-348(H)(8).

¶31        In summary, we hold that the civil enforcement of a municipal ordinance is a "civil action" under § 12-348(A)(1) and not a criminal proceeding under § 12-348(H)(8) and that municipal courts have jurisdiction over such civil enforcement actions. We also hold that the specific provisions of § 12-348(H)(1) through (8) do not demonstrate a general legislative intent to exempt the City from the requirement that it pay the attorney fees of a party prevailing against it in such an action.

¶32        Petitioners have requested their attorney fees incurred in this special action pursuant to § 12-348(A)(4). That section requires a court to award attorney fees to any

17

nongovernmental party that prevails by an adjudication on the merits of "[a] special action proceeding brought by the party to challenge an action by the state against the party." Because petitioners' special action challenges an action by a municipality, not the state, we reject that request. *See* § 12-348(I)(3) (defining "state" as "this state and any agency, officer, department, board or commission of this state").

¶33        We grant special action relief, vacate the respondent judge's ruling, and direct the respondent judge to remand this case to the Tucson City Court for entry of an award of reasonable attorney fees for the defense of the enforcement action.


_____
                                PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
JOSEPH W. HOWARD, Judge