189 P.3d 1085

**Roger and Doreene WATSON, husband and wife, Third–Party Plaintiffs/Appellants,**

v.

**APACHE COUNTY, a body politic, Third–Party Defendant/Appellee.**

No. 1 CA–CV 07–0327.

Court of Appeals of Arizona, Division 1, Department A.

May 6, 2008.

---

David J. Martin, Lakeside, Attorney for Third–Party Plaintiffs/Appellants.

Aspey, Watkins & Diesel, PLLC, By Donald H. Bayles, Jr. and Carson T.H. Emmons, Flagstaff, Attorneys for Third–Party Defendant/Appellee.

EHRLICH, Judge.

¶ 1 Roger and Doreene Watson appeal the trial court's summary judgment in favor of Apache County on their claim for negligent misrepresentation. The Watsons challenge the court's rulings that the County is entitled to qualified immunity and that they failed to

present or identify facts or an expert witness to establish gross negligence. For the following reasons, we conclude that the County is not entitled to qualified immunity. Accordingly, we reverse the judgment and remand this matter for further proceedings consistent with this opinion.

## FACTS [1] AND PROCEDURAL HISTORY

¶ 2 The Watsons are co-owners with Jorge and Patrina Plasencias of Lot 26 and sole owners of Lot 27 in a subdivision known as Rancho Alegro Unit One in Concho. On behalf of the owners of both lots, on three occasions in 2003, Mrs. Watson inquired at the Apache County Assessor's Office as to the status of a fifty-foot easement on the east side of the properties. On each occasion she was told that the easement was private.

¶ 3 In June 2004, the Watsons and the Plasencias planned to put a fence around Lots 26 and 27. Mrs. Watson went to the County Assessor's Office to investigate the procedure for filing an abandonment of an easement. She spoke with two employees, each of whom told her that the easement on the east side of Lots 26 and 27 was private and that the lots could be fenced as long as the fence was gated and the gate was kept unlocked.

¶ 4 Mrs. Watson also spoke to an employee in the Planning and Zoning Department who confirmed what she had been told by the County Assessor's Office. This individual also told Mrs. Watson that language in the easement that stated that fence construction must be set back for "up to fifty feet" was open to interpretation but that she could fence the property at the border pins.

¶ 5 Mrs. Watson then went to the County Attorney's Office to confirm the information that she had received. A secretary relayed her questions to an attorney and then advised Mrs. Watson that the attorney had said that she could fence the easement up to the border pins as long as both ends were gated and the gates were kept unlocked. Mrs. Watson was not told by any of the county employees with whom she consulted either that they could not give her advice or that she should seek advice elsewhere.

¶ 6 The Watsons and Plasencias built a fence within the easement at a cost of $16,438.00, whereupon a neighbor threatened a lawsuit if they refused to remove the fence. In January 2005, Mrs. Watson returned to the County Assessor's Office where she was told that the information that she had earlier received was incorrect but that, because she had not intended to do anything illegal, she should not remove the fence but force the neighbor to file suit.

¶ 7 In March, two employees of the Apache County Engineer's Office went to the property. Mrs. Watson told them what she had been told by other County personnel, in response to which one of the employees advised her that she could have a fence up to the property pin and did not need to move the fence back fifty feet. This employee added that, rather than take down the fence, Mrs. Watson should force the neighbor to sue.

¶ 8 On April 11, 2005, Gary and Karen Krull and John L. Scott, owners of property adjacent to Lots 26 and 27, filed suit against the Watsons and Plasencias seeking the removal of the fence, a permanent injunction precluding the Watsons and Plasencias from interfering with the use of the easement and an award of attorneys' fees and costs.[2]

¶ 9 In June, Mrs. Watson spoke to the County Manager who told her that she had been wronged by the County employees and that none of them should have made any of the statements to her that they did. He also said that he wanted to speak to the County Attorney because the County could be liable for the statements of its employees.

1. For purposes of this appeal, the County does not dispute the facts as stated by the Watsons. On review, we consider the facts and the inferences to be drawn from those facts "in the light most favorable to the party against whom ... judgment was entered." *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App. 1996). We then decide de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Id.*

2. The Plasencias were dismissed, and they are not parties to this appeal. Accordingly, we will not further address their role.

¶ 10 The Watsons filed a third-party complaint against the County. They alleged that County employees, during the scope of their employment, represented that they were competent to answer Mrs. Watson's questions, that they made false representations on which the Watsons had relied in building the fence, that they knew that the representations were false or were ignorant of the truth and that the Watsons would suffer damages should the Krulls and Scott succeed. The Watsons further alleged that the County employees "owed a duty ... to exercise the skill, care and diligence that would be exercised by a reasonably prudent and competent governmental entity and its employees acting under similar circumstances. However, Apache County and its employees negligently and carelessly misrepresented the matters."

¶ 11 The County answered the complaint, denying the assertions that its employees had made the alleged representations to Mrs. Watson. The County also filed a motion for summary judgment, arguing that, because Mrs. Watson had been seeking advice on where to construct a fence from County employees, she had been seeking County approval within the context of Arizona Revised Statutes (A.R.S.) section 12–820.02(A)(5) (2003), which provides qualified immunity for approvals issued by public employees absent the employees' intent to injure or gross negligence. The County also argued that the claim was precluded by the economic-loss rule.

¶ 12 In their response to the County's motion, the Watsons responded that the County had misconstrued Mrs. Watson's actions as ones seeking the County's approval. They contended that Mrs. Watson had not been seeking approval but "advice and interpretation of the nature of the easement, the meaning of '... up to fifty feet ...', and whether the employees ... thought [that she] could install her fence at her property line and within the easement." They argued that, according to Arizona law, a professional may be liable to third-party non-clients when that third party is injured by the professional's actions. They asserted that a jury should determine if the County's employees, who

ostensibly had the requisite specialized skill and expertise, made misrepresentations as alleged. They also argued that, because the County's employees were acting with specialized skill and because there was no structural-defect claim, the economic-loss rule did not apply.

¶ 13 The County replied that the Watsons were asserting a professional-negligence claim as an exception to the economic-loss doctrine. It argued that such a claim required expert testimony as to the care and competence prevalent in the profession and that the Watsons had provided none.

¶ 14 At oral argument, the Watsons maintained that the necessity of expert testimony was not an issue before the trial court because the County had presented the question for the first time in its reply to their response to its motion. They also argued that expert testimony is not required when the matter is within the understanding of a jury and that discovery was not complete.

¶ 15 Because the County had not disputed the Watsons' version of the facts for the purpose of its motion, the trial court accepted those facts. It then ruled as follows:

> The Court finds that the facts indicate that Plaintiff relied on the authorization or approval of Apache County employees in building the fence on the easement. A.R.S. § 12–820.02 provides the county with immunity for these facts unless the public employees intended to cause injury or were grossly negligent. There are no facts at all to indicate the public employees intended to cause injury.

> \* \* \*

> The Court is left with the question of whether Apache County employees were "grossly negligent".
> The Court finds that expert testimony and additional facts regarding the actions of Apache County are necessary to make such a determination.

> \* \* \*

> THEREFORE Summary Judgment is granted to the extent that the Court finds that the county's actions were an approval

of the fence and Summary Judgment is granted as to whether or not the county's actions were grossly negligent because no expert testimony has been disclosed and no facts submitted that could establish gross negligence.

The court also granted judgment on the pleadings against the Watsons, and the Watsons appealed.

## DISCUSSION

■ ¶ 16 The Watsons argue that the trial court erred in concluding that the County's response to Mrs. Watson's inquiries constituted an "approval" within the meaning of A.R.S. § 12–820.02(A)(5) such that the County was qualifiedly immune from the Watsons' claim. Statutory interpretation presents an issue of law that we review de novo. *Douglas v. Governing Bd. of Window Rock Consol. Sch. Dist. No. 8*, 206 Ariz. 344, 346 ¶ 4, 78 P.3d 1065, 1067 (App.2003).

¶ 17 "The primary rule of statutory construction is to find and give effect to legislative intent." *Sanderson Lincoln Mercury, Inc. v. Ford Motor Co.*, 205 Ariz. 202, 205 ¶ 11, 68 P.3d 428, 431 (App.2003) (quoting *Mail Boxes, etc. U.S.A. v. Indus. Comm'n of Ariz.*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995)). In determining that intent, we first look to the language of the statute, construing its words and phrases according to their common usage. *Id.* If the language is plain in its meaning, we need not employ other rules of statutory construction. *Id.* If the legislative intent is ambiguous, however, "we consider other factors such as the statute's context, subject matter, historical context, effects and consequences, and spirit and purpose." *Id.*

¶ 18 Section 12–820.02(A)(5), A.R.S., provides:

A. Unless a public employee acting within the scope of the public employee's employment intended to cause injury or was grossly negligent, neither a public entity nor a public employee is liable for:

\* \* \*

■ 5. The issuance of or failure to revoke or suspend any permit, license, certificate, approval, order or similar authorization for which absolute immunity is not provided pursuant to [A.R.S.] § 12–820.01 [(2003)].

Statutes granting immunity, such as this one, are construed narrowly to give effect to the policy "that public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state." *Doe ex rel. Doe v. State*, 200 Ariz. 174, 175–76 ¶ 4, 24 P.3d 1269, 1270–71 (2001) (citation omitted).

¶ 19 The County contends that, in seeking the advice of its employees whether she could build a fence at the border pins of her property, Mrs. Watson was seeking the "approval" of the County under A.R.S. § 12–820.02 no matter how informal her approach. Construing the statute as narrowly as we must, however, we do not believe that "approval" has the broad informal meaning for which the County advocates. Rather, "approval" is one of several terms that clearly involve more official government action than is implicated by an employee's opinion in response to an individual's questions; the statute lists "approval" in the context of "permit, license, certificate, approval, order or similar authorization." Thus, the context of the word "approval" is that of an "authorization," and, in turn, "authorization" has been defined as "legal power or right; sanction," Webster's New Universal Unabridged Dictionary 126 (2d ed.1983), while "authorize" has been defined as "to give official approval or legal power to;" and "[t]o empower; to give a right or authority to act." *Id.; see* Black's Law Dictionary 133 (6th ed.1990). When "approval" then is analyzed in the context of "authorization," Mrs. Watson was not seeking the County's permission to build the fence—indeed, she did not need it—but only information that she believed that the County employees could readily provide to her. The County's actions through those employees did not constitute "approval" within the meaning of the statute, and the County's conduct does not fall within the protection of the qualified-immunity statute.

¶ 20 The Watsons next maintain that the trial court erred in granting summary judgment on the basis that they had not identi-

fied an expert and that they had presented no facts to establish gross negligence. Specifically, they argue that, if the County is not protected by qualified immunity, then the issue of gross negligence is irrelevant. The County responds that the Watsons were required to produce expert testimony regarding the standard of care and whether that standard involved negligence or gross negligence. Both parties cite *St. Joseph's Hospital and Medical Center v. Reserve Life Insurance Co.*, 154 Ariz. 307, 742 P.2d 808 (1987).

¶ 21 In *St. Joseph's Hospital,* the Arizona Supreme Court considered the need for expert testimony in a case in which negligent misrepresentation was alleged. *Id.* at 312–16, 742 P.2d at 813–17. The court, examining the Restatement (Second) of Torts § 552 and the accompanying comments, noted that, when the supplier of information on which another relies draws inferences from facts not known to the recipient and does so during a professional or business activity, a "plaintiff must present expert witness testimony as to the care and competence prevalent in [that] business or profession." *Id.* at 315, 742 P.2d at 816. When a matter involves investigation, the supplier of information must exercise the degree of care and competence reasonably expected of one in the supplier's business or profession in ascertaining the facts on which the information is based, but "[e] xpert testimony is not necessary to [determine] the reasonableness of the investigation." *Id.*

¶ 22 Only for the purpose of summary judgment and appeal has the County accepted the Watsons' statement of facts, and we have held that the qualified-immunity statute does not apply. Upon remand, it is for the trial court to utilize the correct legal standard, in which course it may determine whether expert testimony is necessary to prove that the County acted negligently.

¶ 23 Similarly, it is premature to address the County's alternative argument that, regardless whether it has qualified im-

munity or whether expert testimony was required, summary judgment was proper because the Watsons' claim is precluded by the economic-loss rule. The trial court did not address this contention,[3] and, although we may affirm the court if it is correct for any reason, *In re Estate of Lamparella,* 210 Ariz. 246, 250 ¶ 18, 109 P.3d 959, 963 (App.2005), the facts of this case have not been sufficiently developed in the context of the proper legal analysis to allow us to affirm the judgment on this basis.

### CONCLUSION

¶ 24 The County is not entitled to qualified immunity. We therefore reverse the judgment and remand this matter to the trial court for further proceedings.

CONCURRING: PHILIP HALL, and G. MURRAY SNOW, JJ.

---

**3.** The court's reference to the necessity of an affidavit was in the context of its discussion of gross negligence.